<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

_____
                                                        :
RICHARD TOBING and                       :
SYLVIA TOBING,                                :
                                                        :          Civil Action No. 3:17-cv-00474-BRM-DEA
                        Plaintiffs,             :
        v.                                            :
                                                        :                            **OPINION**
PARKER McCAY, P.A., WILLIAMS,       :
CALIRI, MILLER & OTLEY, P.C.,          :
RUSHMORE LOAN MANAGEMENT       :
SERVICES, LLC, FEDERAL HOME        :
LOAN MORTGAGE CORPORATION,       :
WILMINGTON SAVINGS FUND            :
SOCIETY, FSB d/b/a/ CHRISTIANA      :
TRUST, and PRETIUM MORTGAGE        :
ACQUISITION TRUST,                        :
                                                        :
                        Defendants.           :
_____:

**MARTINOTTI, DISTRICT JUDGE**

     Before this Court are: (1) Rushmore Loan Management Services, LLC ("Rushmore"),

Federal Home Loan Mortgage Corporation ("Freddie Mac"), Wilmington Savings Fund Society,

FSB d/b/a Christiana Trust ("Wilmington"), and Pretium Mortgage Acquisition Trust's

("Pretium") Motion to Dismiss for Lack of Jurisdiction and Motion for Judgment on the Pleadings

(ECF No. 18); and (2) Parker McCay, P.A.'s ("Parker") Motion to Dismiss pursuant to Federal

Rules of Civil Procedure 12(b)(1) and (b)(6) (ECF No. 19).[1] Plaintiffs Richard Tobing and Sylvia

Tobing (together, "Plaintiffs") oppose all motions in a single brief. (ECF Nos. 23.) Pursuant to

---

[1] Parker together with Rushmore, Freddie Mac, Wilmington, and Pretium will be referred to as "Moving Defendants."

Federal Rule of Civil Procedure 78(b), the Court did not hear oral argument. For the reasons set forth below, Parker's Motion to Dismiss for Lack of Jurisdiction is **DENIED**, but its Motion to Dismiss pursuant to Rule 12(b)(6) is **GRANTED**. Rushmore, Freddie Mac, Wilmington, and Pretium's Motion to Dismiss for Lack of Jurisdiction is also **DENIED**. However, their Motion for Judgment on the Pleadings is **GRANTED in part** and **DENIED in part**.

## I.  BACKGROUND

### A.  The Foreclosure Action

In October 2007, Plaintiffs purchased a home located in Jackson, New Jersey. (ECF No. 1 ¶ 14.) On October 30, 2007, Plaintiffs executed and delivered to Countrywide Bank, FSB ("Countrywide Bank") a note (the "Note") in the amount of $417,000.00. (*Id.* ¶ 15; Note (ECF No. 19-5).) To secure the obligations under the Note, Plaintiffs executed and delivered to Countrywide Bank a mortgage (the "Mortgage") dated October 30, 2007, which was recorded on November 28, 2007, with the County Clerk of Ocean County, New Jersey. (ECF No. 1 ¶ 15; Mortgage (ECF No. 19-6).)

On December 22, 2008, Countrywide Bank assigned the Note and Mortgage to Countrywide Home Loans Servicing, LP ("Countrywide Home"). Bank of America, N.A. ("BOA") became a successor by merger to BAC Home Loans Servicing, LP, formerly known as Countrywide Home. (ECF No. 1 ¶ 16.) On May 27, 2014, BOA assigned the Note and Mortgage to Freddie Mac. (*Id.* ¶ 17.)

On October 3, 2014, Zucker, Goldberg & Ackerman, LLC commenced a foreclosure proceeding against Plaintiffs in the Superior Court of New Jersey, Chancery Division, Ocean County (the "State Court") on behalf of Freddie Mac (the "Foreclosure Action" or "State Court Action"). (*Id.* ¶ 18; Foreclosure Compl. (ECF No. 19-10).) Plaintiffs filed an answer to the

Foreclosure Action on November 13, 2014, and an amended answer on May 21, 2015. (ECF Nos. 19-11 and 19-12.) On September 2, 2015, Zucker, Goldberg & Ackerman, LLC filed a substitution of attorney identifying Parker as counsel for Freddie Mac in the Foreclosure Action. (Substitution of Attorney (ECF No. 19-13).)[2]

Thereafter, Freddie Mac assigned the Note and Mortgage back to BOA, although the parties dispute whether this took place on June 1, 2015, or August 17, 2015. (ECF No. 1 ¶ 19.) Plaintiffs allege, "The original mortgage assignment was dated on or about August 17, 2015, which was the effective, legal date of the assignment, but at some point it was 'backdated' in an after-the-fact attempt to make it effective as of June 1, 2015," to allegedly proceed with the following assignments. (*Id.*) On June 15, 2015, BOA allegedly assigned the Note and Mortgage to Pretium, "at a time when it had no right" to the Mortgage and Note because the Mortgage and Note was not "assigned to BOA until on or about August 17, 2015 and any attempt to backdate and make the assignment effective as of June 1, 2015 was invalid and without legal effect." (*Id.*) On October 8, 2015, Pretium purportedly assigned the Note and the Mortgage to Wilmington, as Trustee for Pretium. (*Id.* ¶ 20.)

On June 15, 2016, Williams, Caliri, Miller & Otley, P.C. ("Williams Caliri"), another firm representing Freddie Mac in the foreclosure proceeding (ECF No. 1 ¶ 21), filed a motion to permit the recording of a photocopy of an overlap deed for the property on behalf of Freddie Mac. (Freddie Mac's Mot. (ECF No. 19-14).) On June 21, 2016, Parker filed a motion for summary judgment, a motion to strike Plaintiffs' amended answer, and a motion to substitute Wilmington as Plaintiff in

---

[2] The Court notes it may consider and take judicial notice of matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). Court documents are among such matters of public record. *McTernan v. City of York, Penn.*, 577 F.3d 521, 526 (3d Cir. 2009). As such, the Court may consider the filings submitted and rulings in the Foreclosure Action.

the State Court Action. (ECF No. 1 ¶ 21.) On July 22, 2016, the State Court granted summary judgment in favor of Freddie Mac, ordered the clerk of the court to enter default against Plaintiffs, and substituted Wilmington for Freddie Mac. (ECF No. 19-23.)

**B. This Action**

On January 24, 2017, Plaintiffs filed this action alleging Defendants violated various provisions of the Fair Debt Collection Practices Act ("FDCPA") and violated the New Jersey Consumer Fraud Act ("NJCFA").[3] (*See* ECF No. 1.) Essentially, Plaintiffs argue: (1) the continuation of the Foreclosure Action and filing of motions by Freddie Mac, Parker, and Williams Caliri after it assigned its rights to the Mortgage and Note to BOA on August 17, 2015, violated the FDCPA; (2) Pretium and Wilmington's efforts to collect on the Mortgage and Note violated the FDCPA because they did not hold a valid assignment of the Mortgage and Note; (3) Wilmington seeking to be substituted as plaintiff in the foreclosure motion violated the FDCPA because it did not hold a valid assignment of the Mortgage and Note; and (4) because Wilmington did not hold a valid assignment of the Mortgage and Note its service provider, Rushmore, collecting on the Note and Mortgage constituted harassment and abuse. (See ECF No. 1 (Counts 1 through 4).)

Thereafter, on February 3, 2017, after this action was filed but before it was served on Moving Defendants, Wilmington, in the Foreclosure Action, filed a motion for entry of judgment. (ECF No. 18-8.) On June 15, 2017, five months after the commencement of this action, final

---

[3] Plaintiffs note that to the extent the Complaint can be read as asserting a NJCFA claim against Parker, Plaintiffs agree to **DISMISS** that claim **with prejudice**, stating they intended only to bring that claims as to all other Moving Defendants. (ECF No. 23 at 22.) As such, the Complaint should be dismissed in its entirety as to Parker, as set forth below.

judgment was grated and entered in Wilmington's favor in the State Court Action. (ECF No. 19-24.) Both actions were pending simultaneously.

On May 15, 2017, Freddie Mac, Pretium, Wilmington, and Rushmore filed an Answer to the Complaint and Crossclaim against Parker and Williams Caliri. (ECF No. 8.) On September 9, 2017, Freddie Mac, Pretium, Rushmore, and Wilmington filed a Motion to Dismiss for Lack of Jurisdiction and Motion for Judgment on the Pleadings. (ECF No. 18.) On that same day, Parker McCay filed a Motion to Dismiss. (ECF No. 19.)

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

When a defendant moves to dismiss a claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court must determine whether defendant is making a "facial or factual challenge to the court's subject matter jurisdiction." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Under a facial attack, the movant challenges the legal sufficiency of the claim, and the court considers only "the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff." *Gould Elecs.*, 220 F.3d at 176; *Mortensen*, 549 F.2d at 891 ("The facial attack does offer similar safeguards to the plaintiff [as a 12(b)(6) motion]: the court must consider the allegations of the complaint as true."). The Court "may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction." *D.G. v. Somerset Hills Sch. Dist.*, 559 F. Supp. 2d 484, 491 (D.N.J. 2008) (citing *Cardio–Medical Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983)).

Under a factual attack, however, the challenge is to the trial court's "very power to hear the case." *Mortensen*, 549 F.2d at 891. Thus:

> [T]here is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Id.* Moreover, in a factual attack, "the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction." *Gould Elecs.*, 220 F.3d at 178.

Regardless of the analysis, the plaintiff bears the burden of demonstrating the existence of subject matter jurisdiction. *See McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006); *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009) (citing *Carpet Grp. Int'l v. Oriental Rug Importers Ass'n*, 227 F.3d 62, 69 (3d Cir. 2000)).

Here, Moving Defendants are asserting a facial 12(b)(1) challenge because they assert Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine. Specifically, they argue "[e]very allegation of the Complaint in this case attempts to assert that the wrongful conduct in this case arose out of what the plaintiff calls the 'purported' assignment of the mortgage and note by Freddie Mac to [BOA] on August 17, 2015." (ECF No. 18-13 at 7 and ECF No. 19-1 ("Here, it is indisputable that Plaintiffs' Complaint relied upon the same underlying allegations presented during the litigation of the Foreclosure Action – that the foreclosure plaintiff lacked standing to foreclose and that the appropriate assignments of mortgage had not been executed.").) The Court, therefore, accepts the allegations in the Complaint as true.

**B. Federal Rule of Civil Procedure 12(b)(6)**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court many not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.,* 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426.

### C.       Federal Rule of Civil Procedure 12(c)

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Pursuant to Rule 12(c), the movant for judgment on the pleadings must establish: (1) that no material issue of fact remains to be resolved; and (2) the entitlement to judgment as a matter of law. *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (citing *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988). In resolving a motion made pursuant to Rule 12(c), the Court must view the facts in the pleadings and the inferences therefrom in the light most favorable to the non-movant. *See Rosenau*, 539 F.3d at 221.

Furthermore, even though a motion for judgment on the pleadings is appropriate after the pleadings have been closed, such a motion is reviewed under the same standards that apply

8

to a motion to dismiss made under Rule 12(b)(6). *See Szczurek v. Prof'l Mgmt. Inc.*, 627 F. App'x 57, 60 (3d Cir. 2015) (citing *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)); *see also Muhammad v. Sarkos*, 2014 WL 4418059 (D.N.J. Sept. 8, 2014) ("Where a defendant's motion is one for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), it is treated under the same standards as a Rule 12(b)(6) motion where it alleges that a plaintiff has failed to state a claim.") (citing *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991); *Gebhart v. Steffen*, 574 F. App'x 156, 157 (3d Cir. 2014)).

## III. DECISION

### A. *Rooker-Feldman*

Parker argues Plaintiffs' claims should be dismissed entirely because they "were already presented to and rejected by the Superior Court of New Jersey," and therefore this Court lacks jurisdiction pursuant to the *Rooker-Feldman* doctrine. (ECF No. 19-1 at 14.) Rushmore, Freddie Mac, Wilmington, and Pretium also argue Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine because all claims brought by Plaintiffs "focus on the allegedly wrongful assignment of the mortgages in the Foreclosure Action" and such claims were properly addressed in the Foreclosure Action. (ECF No. 18-13 at 7.) Plaintiffs argue they are not seeking "review or relief from the state court foreclosure judgment." (ECF No. 23 at 10.) Instead, "[t]hey are asserting independent FDCPA violations" and "are seeking statutory penalties and other damages." (*Id.*)

Pursuant to *Rooker-Feldman*, federal district courts lack subject matter jurisdiction to review and reverse state court judgments. *In re Knapper*, 407 F.3d 573, 580 (3rd Cir. 2005). *Rooker–Feldman* serves to bar a claim when: (1) the federal claim was actually litigated in state court before the plaintiff filed the federal action or, (2) "if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a

conviction that the state court was wrong." *Id.* The Third Circuit has held a federal claim is "inextricably intertwined" with an issue adjudicated by a state court when: "(1) the federal court must determine . . . the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment." *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009) (quoting *Walker v. Horn*, 385 F.3d 321, 330 (3d Cir. 2004)). Significantly,

> [f]our requirements must be met for the [*Rooker-Feldman*] doctrine to apply: (1) the plaintiff lost in state court; (2) the plaintiff complains of injury caused by the state court judgment; (3) the state court judgment was rendered before the federal suit was filed; and (4) the plaintiff invites the district court to review and reject the state court judgment.

*Gage v. Wells Fargo Bank, NA AS*, 521 F. App'x 49, 50–51 (3d Cir. 2013) (citing *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010)). Where, on the other hand, the federal plaintiff presents "some independent claim, albeit one that denies a legal conclusion that a state court has reached," the doctrine does not apply. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005), quoted in *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 547–48 (3d Cir. 2006). In such an instance, jurisdiction is confirmed and the court should then consider "whether the defendant prevails under principles of preclusion." *Exxon Mobil*, 544 U.S. at 292.

The *Rooker-Feldman* doctrine "is a narrow doctrine that applies only in limited circumstances." *Shibles v. Bank of Am., N.A.*, No. 17-2386, 2018 WL 1448670, at *2 (3d Cir. Mar. 23, 2018) (citations omitted); *In re Philadelphia Entm't & Dev. Partners*, 879 F.3d 492, 499 (3d Cir. 2018) ("[F]ederal courts had been applying the *Rooker-Feldman* doctrine too broadly and consequently it clarified that the doctrine is confined to 'limited circumstances' where 'state-court

losers complain[] of injuries caused by state-court judgments rendered before the district court proceedings commend and invit[e] district court review and rejection of those judgments.") (citation omitted). This Court finds this case does not present one of those limited circumstances. The four requirements "must be met for the doctrine to apply." *Gage*, 521 F. App'x at 50–51. Here, the fourth factor is not satisfied. The final state court's final judgment was not rendered before Plaintiffs commenced this federal action. *Exxon Mobil*, 544 U.S. at 284 (noting that the doctrine is restricted to "cases brought by state-court losers complaining of injuries caused by state-court judgments r*endered before the district court proceedings commenced* and inviting district court review and rejection of those judgments.") (emphasis added); *Gage*, 521 F. App'x at 50–51 (stating that in order for the *Rooker-Feldman* doctrine to apply "the state court judgment was rendered before the federal suit was filed"); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) (holding "a United States District Court has no authority to review *final judgments* of a state court in judicial proceedings") (emphasis added); *Great W. Mining & Mineral Co.*, 615 F.3d at 164 (finding "a United States District Court has no authority to review *final judgments* of a state court in judicial proceedings" (citation omitted)) (emphasis added). In fact, here the State Court granted summary judgment in favor of Freddie Mac on July 22, 2016. (ECF No. 19-23.) Thereafter, on January 24, 2017, Plaintiffs filed this action. (ECF No. 1.) However, final judgment was not grated or entered in the State Court Action until June 15, 2017, five months after the commencement of this action. (ECF No. 19-24.) Accordingly, the Court finds *Rooker-Feldman* does not bar Plaintiffs' claims, and the Court has subject matter jurisdiction over Plaintiffs' claims. Defendants' motions to dismiss pursuant to Rule 12(b)(1) are **DENIED**.

**B.      Entire Controversy Doctrine**

Parker argues:

> It is undisputed that all of Plaintiffs' claims against Parker arise and relate to the Foreclosure Action and the assignments of mortgage involved therein. Each claim arises from the same set of operative facts giving rise to the Foreclosure Action and concerns issues previously adjudicated in that action – specifically standing to foreclosure and challenges relating to the corresponding assignments of mortgage.

(ECF No. 19-1 at 27.) Rushmore, Freddie Mac, Wilmington, and Pretium argue Plaintiffs' claims are barred under New Jersey's entire controversy doctrine because "the FDCPA and NJCFA claims [in this matter] arise from [their] communications and actions in pursuing the foreclosure of [Plaintiffs'] mortgage." (ECF No. 18-13.) Plaintiffs contend the claims before this Court could not have been asserted in the Foreclosure Action because they were not germane to such action and are not transactionally related to the Mortgage. (ECF No. 23 at 16-18.)

New Jersey's entire controversy doctrine is "an extremely robust claim preclusion device that requires adversaries to join all possible claims stemming from an event or series of events in one suit." *Chavez v. Dole Food Co.*, 836 F.3d 205, 228 n.130 (3d Cir. 2016). The doctrine

> requires a party to bring in one action all affirmative claims that it might have against another party or be forever barred from bringing a subsequent action involving the same underlying facts. The central consideration is whether the claims arise from related facts or the same transaction or series of transactions.

*Opdycke v. Stout*, 233 F. App'x 125, 129 (3d Cir. 2007) (marks and citations omitted); *see also Ricketti v. Barry*, 775 F.3d 611, 613 (3d Cir. 2015). "The purposes of the doctrine are threefold: (1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay." *Ditrolio v. Antiles*, 142 N.J. 253, 267

(1995). The Third Circuit has ruled that "[a] federal court hearing a federal cause of action is bound by New Jersey's Entire Controversy Doctrine, an aspect of the substantive law of New Jersey, by virtue of the Full Faith and Credit Act, 28 U.S.C. § 1738 (1994)." *Litgo N.J., Inc. v. Comm'r N.J. Dep't of Envtl. Prot.*, 725 F.3d 369, 400 n.2 (3d Cir. 2013) (quoting *Rycoline Prods. v. C & W Unlimited*, 109 F.3d 883, 887 (3d Cir. 1997)).

The entire controversy doctrine applies to foreclosure proceedings, but encompasses only "germane" counterclaims. N.J. Ct. R. 4:64–5 ("Only germane counterclaims and cross-claims may be pleaded in foreclosure actions without leave of court."); *see also In re Mullarkey*, 536 F.3d 215, 228 (3d Cir. 2008). The word "germane" is construed very narrowly in this context. "The use of the word 'germane' in the language of the rule undoubtedly was intended to limit counterclaims in foreclosure actions to claims arising out of the mortgage transaction which is the subject matter of the foreclosure action." *Leisure Technology–Northeast v. Klingbeil Holding Co.*, 349 A.2d 96, 98 (N.J. 1975). For example, in *Mullarkey*, the Third Circuit found that because Mullarkey did "not contend that the Defendant's actions cause the default of his mortgage obligations" and "[r]ather, his claims are based on the actions and representations of the [the defendant] during the bankruptcy proceedings," they were not germane. *In re Mullarkey*, 536 F.3d at 230. Therefore, courts have found counterclaims in foreclosure proceedings to be "germane" if they arose out of the mortgage that was the basis of the foreclosure action or were dispositive to the foreclosure proceeding. *See e.g.*, *Coleman v. Chase Home Fin., LLC ex rel. Chase Manhattan Mortg. Corp.*, 446 F. App'x 469, 472 (3d Cir. 2011); *In re Mullarkey*, 536 F.3d at 230.

On this Motion to Dismiss, Defendants argue Plaintiffs were required, by the entire controversy doctrine, to assert their FDCPA and NJFCA claims against Defendants in the Foreclosure Action. Defendants contend Plaintiffs' failure to bring those claims against them in

13

the Foreclosure Action precludes them from bringing those claims in this action. However, Defendants' argument is fundamentally flawed in that the entire controversy doctrine only applies to claims that are germane to the foreclosure proceedings.

The entire controversy doctrine does not apply to Plaintiffs' FDCPA claims against Defendants because they were not germane to the Foreclosure Action against Plaintiffs. Nowhere are Plaintiffs challenging Freddie Mac's, and subsequently Wilmington's (due to substitution of plaintiff in the Foreclosure Action) right to ultimately foreclose; rather, Plaintiffs allege certain communications during the collection process violated the FDCPA. Specifically, the Foreclosure Action determined whether Plaintiffs' fulfilled their obligations under the Mortgage contract and defaulted on their obligations. Those facts do not give rise to Plaintiffs' FDCPA claim because their claim is not premised on an allegation that they did not fulfill their obligations or that the Foreclosure Action was invalid. Instead, this FDCPA suit involves Defendants' misrepresentations and fraudulent efforts to collect on the debt. Particularly, the claims in this action arise from Defendants' alleged use of false and misleading statements in collecting on the Mortgage (stating they still owned the Mortgage after they had allegedly assigned it to another mortgagee); the continuation of the Foreclosure Action by Freddie Mac and filing of motions by Freddie Mac, Parker, and Williams Caliri after it allegedly assigned its rights to the Mortgage and Note to BOA on August 17, 2015; and Wilmington seeking to be substituted as plaintiff in the Foreclosure Action. (*See* ECF No. 1 (Counts 1 through 4).) The two suits are related insofar as the Foreclosure Action forms the basis for this action, but the FDCPA claims were not germane to the Foreclosure Action. Because Plaintiffs do not allege the violation affected Defendants' right to take, they were not required to raise it in the foreclosure proceeding.

In fact, the FDCPA claims did not arise until after the commencement of the Foreclosure Action. On October 3, 2014, Freddie Mac commenced the Foreclosure Action against Plaintiffs. (ECF No. 1 ¶ 18 and ECF No. 19-10.) The first alleged assignment of the Note and Mortgage did not occur until August 17, 2015, approximately ten months after the commencement of the Foreclosure Action. (ECF No. 1 ¶ 19.) As such, Plaintiffs FDCPA claims arising from Defendants' misrepresentations and fraudulent efforts to collect on the debt did not occur until well after the proceeding commence. Logically, the FDCPA claims could not have been germane to the Foreclosure Action, which determined only whether or not Plaintiffs' fulfilled their obligations under the Mortgage contract and defaulted on their obligations. As such, it seems unfair to hold the Foreclosure Action preclusive of the subsequent FDCPA claims. Indeed, Plaintiffs' would have had to interrupt the Foreclosure Action multiple times and filed motions to amend in order to bring all their FDCPA claims that were allegedly occurring at different times during that proceeding. Such a requirement would be inefficient and delay the proceeding. *K–Land Corp. No. 28 v. Landis Sewerage Auth.*, 800 A.2d 861, 868 (N.J. 2002) ("The entire controversy doctrine [is] an equitable preclusionary doctrine whose purposes are to encourage comprehensive and conclusive litigation determinations, to avoid fragmentation of litigation, and to promote party fairness and judicial economy and efficiency."). Therefore, the entire controversy doctrine does not bar Plaintiffs' FDCPA claims. Accordingly, the Court is not barred from hearing Plaintiffs' FDCPA claims under the entire controversy doctrine. Defendants' motions to Dismiss pursuant to the entire controversy doctrine are **DENIED**.

### C.    *Res Judicata* **and Collateral Estoppel**

Moving Defendants argue Plaintiffs' claims are barred by *res judicata* and/or collateral estoppel. (*See* ECF No. 18-13 at 12-13 and ECF No. 19-1 at 21-25.) The Court finds, for similar reasons detailed above under the entire controversy doctrine, Plaintiffs' claims are not barred by *res judicata* or collateral estoppel.

*Res judicata* bars plaintiffs from bringing causes of action that were already adjudicated in an earlier action between two parties or that could have been determined in an earlier action. *Watkins v. Resorts Int'l Hotel and Casino, Inc.*, 124 N.J. 398, 409 (1991). "Res judicata, or claim preclusion, is a court-created rule that is designed to draw a line between the meritorious claim on the one hand and the vexatious, repetitious and needless claim on the other hand." *Purtner v. Heckler*, 771 F.2d 682, 689–90 (3d Cir. 1985) (footnote and citation omitted). The doctrine "bars a party from initiating a second suit against the same adversary based on the same 'cause of action' as the first suit." *Duhaney v. Atty. Gen. of U.S.*, 621 F.3d 340, 347 (3d Cir. 2010) (citing *In re Mullarkey*, 536 F.3d at 225). "A party seeking to invoke res judicata must establish three elements: '(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action.'" *Id.* (quoting *In re Mullarkey*, 536 F.3d at 225). "The doctrine of res judicata bars not only claims that were brought in a previous action, but also claims that could have been brought." *In re Mullarkey*, 536 F.3d at 225 (citing *Post v. Hartford Ins. Co.*, 501 F.3d 154, 169 (3d Cir. 2007)).

This court's reasoning set forth above likewise applies here, namely, this suit was not based on the same cause of action as the Foreclosure Action, which determined whether Plaintiffs fulfilled their obligations under the Mortgage contract and default on their obligations. In this case, Plaintiffs seek damages based on alleged FDCPA and NJCFA violations. Moreover, not all

16

Defendants to this action were involved in the Foreclosure Action. The judgment arising from that action is only applicable to Plaintiffs and Wilmington. Therefore, *res judicata* does not bar Plaintiffs' claims.

Collateral estoppel precludes a party from re-litigating an issue when:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

*Twp. Of Middletown v. Simon*, 193 N.J. 228, 236 (2008). Here, because these claims were not identical or similar to that issues in that action the issues underlying Plaintiffs' claims against Defendants were not actually litigated in the Foreclosure Action. Therefore, collateral estoppel does not bar Plaintiffs' claims and Defendants' motions to dismiss pursuant to *res judicata* and collateral estoppel are **DENIED**.

### D.     *Noerr-Pennington* Doctrine

Parker argues Plaintiffs' claims against it are barred by the application of the *Noerr-Pennington* doctrine. (ECF No. 19-1.) The *Noerr–Pennington* doctrine protects the First Amendment guarantee of the right of the people to "petition the Government for redress of grievances." U.S. Const. Amend. I. Although the *Noerr–Pennington* doctrine originally applied to antitrust cases to immunize those who petition the government, including the courts, for redress, *Prof'l Real Estate Invs., Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 56 (1993); *Cal. Motor Transp. Co. v. Trucking Unltd.*, 404 U.S. 508, 510 (1972), courts have expanded its application to other contexts. *See, e.g.*, *BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516 (2002) (applying *Noerr–Pennington* doctrine to National Labor Relations Act claims); *Sosa v. DIRECTV, Inc.*, 437 F.3d

923 (9th Cir. 2006) (applying *Noerr–Pennington* doctrine to RICO claims involving pre-litigation demand letters); *Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155, 160 (3d Cir. 1988) (finding that *Noerr–Pennington* doctrine immunized defendants from tort liability for petitioning government to shut down nursing home). Regarding these extensions, the Third Circuit has noted: "This court, along with other courts, has by analogy extended the *Noerr–Pennington* doctrine to offer protection to citizens' petitioning activities in contexts outside the antitrust area as well." *We, Inc. v. City of Phila.*, 174 F.3d 322, 326–27 (3d Cir. 1999).

However, the Third Circuit has yet to extend the *Noerr-Pennington* doctrine to FDCPA cases, and this Court is unpersuaded that the *Noerr-Pennington* doctrine bars actions under the FDCPA. Indeed, Defendants present no cases in which this District has applied the *Noerr–Pennington* doctrine to FDCPA claims. Contrarily, the FDCPA encompasses lawyers engaging in litigating activities, such as debt collection. *See Heintz v. Jenkins*, 514 U.S. 291 (1995).

Moreover, majority of courts have rejected the argument that the *Noerr-Pennington* doctrine extends to FDCPA claims brought against debt-collectors based on litigation activity. *See Wise v. Zwicker & Assoc., P.C.*, 780 F.3d 710 n.5 (6th Cir. 2015); *Nyberg v. Portfolio Recovery Assocs., LLC*, No. 3:15-01175, 2016 WL 3176585, at *8 (D. Or. June 2, 2016) ("First Amendment does not confer a right upon debt collectors to petition courts in a manner that violates the FDCPA."); *Applewhite v. Anaya Law Grp.*, No. 14-00385, 2015 WL 11438097, at *5 (C.D. Cal. June 15, 2015) (finding the *Noerr-Pennington* doctrine did not bar the FDCPA claim against a law firm acting as a third-party debt collector); *Fritz v. Resurgent Capital Servs., LP*, 955 F. Supp. 2d 163, 176 (E.D.N.Y. 2013) ("The Court agrees with and adopts the Sixth Circuit's reasoning that *Noerr-Pennington* does not provide immunity for intentional misrepresentation made in litigation."); *Basile v. Blatt, Hasenmiller, Leibsker & Moore LLC*, 632 F. Supp. 2d 842, 845–46

18

(N.D. Ill. 2009) (finding that "the term 'debt collector' as used in the FDCPA applies to attorneys who regularly engage in consumer-debt-collection activity, even when that activity consists of litigation" (citations omitted)).These courts rely on the Supreme Court's holding in *Heintz*, "which contemplated attorney liability under the FDCPA." *Basile*, 632 F. Supp. 2d at 846 (citing *Heintz* 514 U.S. at 299). In *Heintz*, the United States Supreme Court held the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *Heintz*, 514 U.S. at 299. The Court agrees with the majority that *Noerr-Pennington* does not extend to FDCPA claims brought against debt-collectors.

However, the court in *Satre v. Wells Fargo Bank, N.A.*, 507 F. App'x 655, 655 (9th Cir. 2013) found that an attorney representing a defendant in an action to enjoin a foreclosure sale can be immune from suit in a later federal FDCPA case if the attorney is found not to be a "debt collector." *Id.* ("The district court properly determined that Wechsler is immune from FDCPA liability under the *Noerr–Pennington* doctrine because [plaintiffs'] factual allegations in their amended complaint failed to establish that [defendant], who was defending his client from litigation initiated by the [plaintiffs], was a 'debt collector.'").

To support their argument that the *Noerr–Pennington* doctrine applies here, Defendants rely on the Ninth Circuit's decision in *Satre*. Indeed, *Satre* is analogous to the case before this Court. Like in *Satre*, Plaintiffs have failed to allege Parker qualifies as a debt collector under the FDCPA. The FDCPA defines a "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses

19

> any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a(6). "The activity of foreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA." *See Walker v. Equity 1 Lenders Grp.*, No. 09-325, 2009 WL 1364430 at *7 (S.D. Cal. May 14, 2009); *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002) ("Foreclosing on a trust deed is distinct from the collection of the obligation to pay money. The FDCPA is intended to curtail objectionable acts occurring in the process of collecting funds from a debtor. . . . Payment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the property.").

Plaintiffs solely allege Parker violated the FDCPA by continuing the Foreclosure Action and filing motions in the Foreclosure Action against Plaintiffs on behalf of Freddie Mac, after it allegedly assigned its rights to the Note and Mortgage. (*See* ECF No. 1.) Plaintiffs fail to allege Parker "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). They further fail to allege Parker "regularly" engages in consumer debt collection activing in the context of litigation. Therefore, they only argue that the activity of foreclosing on the property violated the FDCPA. Because foreclosing on a property is distinct from the collection of the obligation to pay, Plaintiffs have failed to adequately allege Parker is a "debt collector" within the meaning of the FDCPA. As such, like in *Satre*, Parker is immune from FDCPA liability under the *Noerr–Pennington* doctrine because the Plaintiffs' factual allegations in their Complaint fail to establish that Parker was as a debt collector. *Satre*, 507 F. App'x at 655. Accordingly, Parker's Motion to Dismiss Plaintiffs'

FDCPA claims against it pursuant to the doctrine of *Noerr-Pennington* is **GRANTED without prejudice**.

### E. FDCPA Claims Against Freddie Mac, Rushmore, Wilmington, and Pretium

Freddie Mac, Rushmore, Wilmington, and Pretium argue they are entitled to judgment on the pleadings as to Plaintiffs' FDCPA claims (Counts 1 through 4) because they are not debt collectors under the FDCPA. (ECF No. 18-13 at 13-16.) Specifically, Freddie Mac, Wilmington, and Pretium argue they are not debt collectors because they "were brought into this action solely on the grounds that they were 'owners' of the debt owed by [Plaintiffs]." (*Id.* at 16.) In addition, they argue "the case must also be dismissed at to . . . Rushmore which is identified in the Complaint without any reference whatsoever to any wrongdoing on its part in this litigation." (*Id.*) Plaintiffs argue Freddie Mac, Rushmore, Wilmington, and Pretium are debt collectors under FDCPA. (ECF NO. 23 at 14-15.) In regards to Rushmore and Wilmington, Plaintiffs argue they sought to collect debts owned by another. (*Id.* at 15.) Specifically, Rushmore "is alleged to have sought to collect the debt on behalf of Wilmington." (*Id.*) Wilmington is alleged to collect a debt as a trustee for Pretium. (*Id.*)

Congress enacted the FDCPA as a result of the "abundance evidence of the use of abusive, deceptive, and unfair debt collection practices" and the inadequacy of existing laws and procedures designed to protect consumers. 15 U.S.C. § 1692(b). The stated purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors" and to promote further action to protect consumers against debt collection abuses. *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 174 (3d Cir. 2015) (quoting 15 U.S.C. § 1692(e)). "The right congress sought to protect in enacting this legislation was therefore not merely procedural, but substantive and of great importance."

*Blaha v. First Nat'l Collection Bureau*, Civ. No. 16-cv-2791, 2016 U.S. Dist. LEXIS 157575, at

*23 (D.N.J. Nov. 10, 2016).

Typically, "[t]o prevail on an FDCPA claim, a plaintiff must prove that (1) she is a

consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves

an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a

provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*,

765 F.3d 299, 303 (3d Cir. 2014); *see also Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d

Cir. 2015).

The FDCPA defines a "debt collector" as:

> any person who uses any instrumentality of interstate commerce or
> the mails in any business the principal purpose of which is the
> collection of any debts, or who regularly collects or attempts to
> collect, directly or indirectly, debts owed or due or asserted to be
> owed or due another. Notwithstanding the exclusion provided by
> clause (F) of the last sentence of this paragraph, the term includes
> any creditor who, in the process of collecting his own debts, uses
> any name other than his own which would indicate that a third
> person is collecting or attempting to collect such debts. For the
> purpose of section 1692f(6) of this title, such term also includes any
> person who uses any instrumentality of interstate commerce or the
> mails in any business the principal purpose of which is the
> enforcement of security interests.

15 U.S.C. § 1692a(6). In the Motion to for Judgment on the Pleadings, Freddie Mac, Rushmore,

Wilmington, and Pretium only dispute they are not debt collectors under the FDCPA. Therefore,

the Court will only address that issue.

"Creditors—as opposed to 'debt collectors'—generally are not subject to the FDCPA." *Id.*

A "creditor" is "any person who offers or extends credit creating a debt or to whom a debt is

owed," but "does not include any person . . . that . . . receives an assignment or transfer of a debt

in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. §

22

1692a(4). Accordingly, the definition "excludes creditors who attempt to collect their own debts, but does not exclude an entity . . . who has acquired a debt that was already in default." *Oppong v. First Union Mortg. Corp.*, 215 Fed. App'x 114, 118 (3rd Cir. 2007); *see Staub v. Harris*, 626 F.2d 275, 277 (3rd Cir. 1980) (citations omitted) (noting the FDCPA "does not apply to persons or businesses collecting debts on their own behalf. It is directed to those person who are engaged in business for the principal purpose of collecting debts").

The Court finds the Complaint does not set forth sufficient facts to state a claim for relief under the FDCPA as to Freddie Mac, Pretium, and Wilmington. *Ashcroft*, 556 U.S. at 678. However, all FDCPA claims will proceed as to Rushmore.

First, as to Freddie Mac the Complaint lacks factual details establishing it is a debt collector. In the Complaint, Plaintiffs solely allege Freddie Mac violated the FDCPA by continuing the Foreclosure Action and filing motions in the Foreclosure Action against Plaintiffs after it allegedly assigned its rights to the Note and Mortgage. (*See* ECF No. 1.) As previously stated, "[t]he activity of foreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA." *See Walker*, 2009 WL 1364430 at *7; *Hulse*, 195 F. Supp. 2d at 1204 ("Foreclosing on a trust deed is distinct from the collection of the obligation to pay money. The FDCPA is intended to curtail objectionable acts occurring in the process of collecting funds from a debtor. . . . Payment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the property."). Plaintiffs fail to allege Freddie Mac "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Moreover, Plaintiffs fail to articulate whether Freddie Mac was attempting to collect on the Mortgage and Note outside of the Foreclosure Action, when the Mortgage and Note were already assigned to another entity. Plaintiffs only argue that the

23

activity of foreclosing on the property violated the FDCPA. Because foreclosing on a property is distinct from the collection of the obligation to pay, Plaintiffs have failed to adequately allege that Freddie Mac is a "debt collector" within the meaning of the FDCPA. Accordingly, Freddie Mac's Motion is **GRANTED** as to all FDCPA claims against it, and Counts 1 through 4 are **DISMISSED without prejudice** as to Freddie Mac.

Second, as to Pretium, the Complaint only alleges "[a]ll efforts of Pretium to collect on the mortgage and note within the last year (and prior thereto) were false, misleading, and fraudulent, because the mortgage and note had not been validly assigned to Pretium" and "Pretium did not hold a valid assignment of the mortgage and note, efforts by it to collect on the note and mortgage constituted harassment and abuse." (ECF No. 1 ¶¶ 26, 35, 45, 55, 65.) To the extent Plaintiffs argue Pretium was never validly assigned the Mortgage and therefore never owned the Mortgage, the Court cannot and will not address that allegation. The State Court clearly determined that the Mortgage followed a proper chain of assignment prior to entering the judgment of Foreclosure. The Court cannot and will not undermine the validity of the state court judgment.

To the extent Plaintiffs argue the Mortgage was not owned by Pretium at the time it attempted to collect on it (meaning Pretium had yet to obtain title to the Mortgage and was collecting on it or had already transferred its rights to someone else and was still collecting on the Mortgage), Plaintiffs have not properly plead facts substantiating such a claim. Plaintiffs merely allege Pretium did not hold the Mortgage at the time it attempted to collect on it. This statement is only a recitation of the definition of a debt collector. Plaintiffs fail to provide examples, dates, or factual allegations demonstrating such argument is true. Plaintiffs have failed to adequately allege that Pretium is a "debt collector" within the meaning of the FDCPA. The only facts before the Court are that at some point Pretium did own the Mortgage and collected on it. The definition of

24

debt collector "excludes creditors who attempt to collect their own debts." *Oppong*, 215 Fed. App'x at 118. Accordingly, Pretium's Motion is **GRANTED** as to all FDCPA claims against it, and Counts 1 through 4 are **DISMISSED without prejudice** as to Pretium.

Third, as to Wilmington, the Court finds the Complaint lacks factual details establishing it is a debt collector. In the Complaint, Plaintiffs allege Wilmington violated the FDCPA by asking to be substituted as the plaintiff in the Foreclosure Action and because it did not hold a valid assignment of the Mortgage and Note when it attempted to collect on it. (*See* ECF No. 1.) As previously stated, "[t]he activity of foreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA." *See Walker*, 2009 WL 1364430 at *7. Plaintiffs fail to allege Wilmington "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Moreover, Plaintiffs fail to articulate whether Wilmington was attempting to collect on the Mortgage and Note outside of the Foreclosure Action, when the Mortgage and Note were already assigned to another entity. Therefore, Plaintiffs only argue that the activity of foreclosing on the property violated the FDCPA. Because foreclosing on a property is distinct from the collection of the obligation to pay, Plaintiffs have failed to adequately allege that Wilmington is a "debt collector" within the meaning of the FDCPA.

In addition, even though Plaintiffs allege Wilmington was acting as a Trustee for Pretium in collecting on the Mortgage and therefore was not collecting its own debt, it is unclear if Wilmington was only acting as Trustee for Pretium during the Foreclosure Action or if Wilmington was asked to collect on Pretium's debt prior to the Foreclosure Action. Accordingly, Plaintiffs have not plead facts demonstrating Wilmington is a debt collector under the FDCPA. Therefore,

Wilmington's Motion is **GRANTED** as to all FDCPA claims against it, and Counts 1 through 4 are **DISMISSED without prejudice** as to Wilmington.

However, the Court finds the FDCPA claims may proceed as to Rushmore. The Complaint alleges: "All efforts of Rushmore to collect on the mortgage and note . . . on behalf of Wilmington were false, misleading, and fraudulent . . . . For example, in June of 2016 Rushmore sent plaintiffs a mortgage statement demanding payment of $337, 875.28 on behalf of Wilmington."(ECF No. 1 ¶ 28.) At this stage, Plaintiffs have sufficiently plead Rushmore is a "debt collector" because it was "attempt[ing] to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Accordingly, Freddie Mac, Rushmore, Wilmington, and Pretium's Motion is **DENIED** as to all FDCPA claims against Rushmore. As such, Counts 1 through 4 remain as to Rushmore.

### F. NJCFA Claims Against Freddie Mac, Rushmore, Wilmington, and Pretium

In their moving brief, Freddie Mac, Rushmore, Wilmington, and Pretium stated "[e]ven the final fifth count of the Complaint which alleges the entitlement to relief under the New Jersey Consumer Fraud Act leaves relies completely on violations of the FDCPA including 15 U.S.C. §§1692k(a)(2)(A) and 1603k(a)(3)." (ECF No. 18-13 at 13.) Plaintiffs argue the NJCFA claim should not be dismissed because "it is not barred by New Jersey's litigation privilege, by the *Noerr-Pennington* doctrine, by the *Rooker-Feldman* doctrine, or by claim preclusion principals" and Freddie Mac, Rushmore, Wilmington, and Pretium "have provided no sound reason for dismissal of the claim." (ECF No. 23 at 23.) The Court agrees with Plaintiffs that Freddie Mac, Rushmore, Wilmington, and Pretium have failed to provide reasons and case law for dismissal of the NJCFA claim in their moving brief.

Freddie Mac, Rushmore, Wilmington, and Pretium did, however, attempt to dismiss the NJCFA claim in their reply brief by citing to the statute and case law. However, it is well established that new arguments cannot be raised for the first time in reply briefs, as Freddie Mac, Rushmore, Wilmington, and Pretium have attempted to do here. *See United States v. Cruz*, 757 F.3d 372, 387 (3d Cir. 2014); *Elizabethtown Water Co. v. Hartford Cas. Ins. Co.*, 998 F. Supp. 447, 458 (D.N.J. 1998). Plaintiffs were deprived of the opportunity to respond to such arguments. Accordingly, Freddie Mac, Rushmore, Wilmington, and Pretium Motion to Dismiss Plaintiffs' NJCFA claims is **DENIED**.

## IV. CONCLUSION

For the reasons set forth above, Parker's Motion to Dismiss for Lack of Jurisdiction is **DENIED**, but its Motion to Dismiss pursuant to Rule 12(b)(6) is **GRANTED** in its entirety. Parker is **DISMISSED** from this matter. Rushmore, Freddie Mac, Wilmington, and Pretium's Motion to Dismiss for Lack of Jurisdiction is also **DENIED**. However, their Motion for Judgment on the Pleadings is **GRANTED in part** and **DENIED in part**. Specifically, their Motion for Judgment on the Pleadings is: (1) **GRANTED without prejudice** as to all FDCPA claims against Freddie Mac (Counts 1 through 4); (2) **GRANTED without prejudice** as to all FDCPA claims against Pretium (Counts 1 through 4); (3) **GRANTED without prejudice** as to all FDCPA claims against Wilmington (Counts 1 through 4); (4) **DENIED** as to all FDCPA claims against Rushmore; and (5) **DENIED** as to Plaintiffs' NJCFA claims against Freddie Mac, Rushmore, Wilmington, and Pretium.

Date: April 30, 2018                                  */s/ Brian R. Martinotti*
                                                      **HON. BRIAN R. MARTINOTTI**
                                                      **UNITED STATES DISTRICT JUDGE**