**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

RICHARD and SYLVIA TOBING

                              CIVIL ACTION: 3:17-cv-00474 BRM DEA

                Plaintiffs,

      v.

PARKER McCAY, P.A., WILLIAMS,
CALIRI MILLER & OTLEY, P.C.,
RUSHMORE LOAN MANAGEMENT
SERVICES, LLC, FEDERAL HOME LOAN
MORTGAGE CORPORATION,
WILMINGTON SAVINGS FUND SOCIETY,
FSB d/b/a CHRISTIANA TRUST, and
PRETIUM MORTGAGE ACQUISITION
TRUST,

               Defendants.

---

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANT,**
**RUSHMORE LOAN MANAGEMENT SERVICES, LLC**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT  ................................................................................... 1

PROCEDURAL HISTORY ........................................................................................... 2

STATEMENT OF MATERIAL UNDISPUTED FACTS ............................................... 4

LEGAL ARGUMENT.................................................................................................... 8

    I.      RUSHMORE IS ENTITLED TO SUMMARY JUDGMENT DISMISSING THIS CASE WITH PREJUDICE.................................................................................. 8

        A.    LEGAL STANDARD............................................................................... 8

        B.    RUSHMORE DID NOT VIOLATE THE FAIR DEBT COLLECTION PRACTICES ACT .................................................................................... 10

               1.    RUSHMORE HAD THE RIGHT TO MAIL MORTGAGE ........... STATEMENTS TO THE TOBINGS  ........................................... 12

               2.    RUSHMORE HAD THE OBLIGATION TO MAIL MORTGAGE STATEMENTS TO THE TOBINGS ........................................... 16

               3.    RUSHMORE'S ACTIONS DID NOT VIOLATE THE FDCPA . 19

    III.    CONCLUSION.................................................................................... 21

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ................................................................9
*Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) ......................9
*Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559 (D.N.J. 2016) ................................... 18, 19
*Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006) ............................................................20
*Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 298 (3d Cir. 2008) ..................20
*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) .........................................................................20
*Citicorp Mortg., Inc. v. Pessin*, 238 N.J. Super. 606, 608 n.2, 570 A.2d 481 (App. Div.) 122 N.J. 141, 584 A.2d 213 (1990) .......2
*Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) .......................................................................9
*Dixon v. Stern & Eisenberg, P.C.*, No. 5:14-CV-4551, 2015 U.S. Dist. LEXIS 80663,2015 WL 3833782, at *10 (E.D. Pa. June 22, 2015), aff'd sub nom, 652 Fed. Appx. 128 (3rd Cir. 2016) ..................................................... 16, 20
*Hahn v. Triumph Partnerships LLC*, 557 F.3d 755 (7th Cir. 2009) ..................................................20
*Hill v. DLJ Mortg. Capital, Inc.*, 2016 U.S. Dist. LEXIS 138526 (E.D.N.Y. 2016) .......................19
*Jensen v. Pressler & Pressler*, 791 F.3d 413, 418 (3d Cir. 2015) ............................................. 19, 20
*Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) ........................................................9
*Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) ............................................................8
*Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) .....................................................9
*Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 133 S.Ct. 1166, 1171 n. 1, 185 L.Ed.2d 242 (2013) ................10
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ...............................9
*New Century Financial Services, Inc. v. Oughla*, 437 N.J. Super. 299, 314  (App. Div. 2014) .......14
*Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000); F.R.E. 201(b) ..................................................2
*Potoczny v. Aurora Loan Servs., LLC*, 33 F. Supp. 3d 554 (E.D. Pa. 2014) ...................................20
*Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999) .................................................9
*Rose v. Rein*, 116 N.J. Eq. 70, 74, 172 A. 510 (E & A 1934) ..........................................................14
*Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) ..........................................................20
*Wells Fargo Bank, NA v. Ford*, 418 N.J. Super. 592 (App. Div. 2011) ...........................................14
*Wilson v. Quadramed Corp.*, 225 F.3d 350, 354-55 (3d Cir. 2000) ..................................................20

**Statutes**

15  U.S.C. § 1638(f) ............................................................................................................................18
15 U.S.C. § 1692 ......................................................................................................................... 10, 11
15 U.S.C. § 1692d .............................................................................................................. 11, 17, 20
15 U.S.C. § 1692e .............................................................................................................. 11, 17, 20
15 U.S.C. § 1692e(10) ....................................................................................................... 11, 17, 20
15 U.S.C. § 1692f .............................................................................................................. 11, 17, 20
15 U.S.C. §§ 1692a-1692o .................................................................................................................10
N.J.S.A. 12A:3–203 ...........................................................................................................................16
N.J.S.A. 12A:3–203(a) .......................................................................................................................15
N.J.S.A. 12A:3–203(b) .......................................................................................................................16
N.J.S.A. 12A:3-301 ............................................................................................................................15
N.J.S.A. 12A:3-309 ............................................................................................................................15
N.J.S.A. 12A:3-418 ............................................................................................................................15

**Other Authorities**

12 C.F.R. § 1026.41(d)(2)(i)-(iii) ......................................................................................................18
12 C.F.R. § 1026.41(d)(7)(i)-(ii) .......................................................................................................18
12 *C.F.R.* §1026.41 .............................................................................................................. 17, 18, 19
Consumer Financial Protection Bureau ..............................................................................................17
Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank Act) [Public Law 111-203, sec. 1420, 124 Stat. 1376 (2010) 13] ...............................................................................................................................19
Fair Debt Collection Practices Act ("FDCPA") ..........................................1, 10, 11, 16, 17, 18, 19, 20
Implementation Guidance for Certain Mortgage Servicing Rules, 10152013 CFPBGUIDANCE, 2013 CFPB Guidances LEXIS 12, 2013 WL 9001249 (C.F.P.B. Oct. 15, 2013) ......................................................................... 17, 19
New Jersey Consumer Fraud Act ("NJCFA") .....................................................................................1
Truth in Lending Act ................................................................................................................... 17, 18

**Rules**

Fed. R. Civ. P. 56 ................................................................................................................................1
Fed. R. Civ. P. 56(c) ...........................................................................................................................8

**PRELIMINARY STATEMENT**

Defendant Rushmore Loan Management Services, LLC ("Rushmore") files this Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 ("Motion").

Plaintiff initially brought this pending action against Defendants Rushmore, Federal Home Loan Mortgage Corporation ("Freddie Mac"), Wilmington Savings Fund Society, FSB d/b/a Christiana Trust not individually but as Trustee for Pretium Mortgage Acquisition Trust ("WSFS"), and Pretium Mortgage Acquisition Trust ("Pretium") seeking relief under the First through Fourth Counts for alleged violations of the Fair Debt Collection Practices Act ("FDCPA") and the Fifth Count for alleged violations of the New Jersey Consumer Fraud Act ("NJCFA")(Dk.1).

On April 30, 2018, this Court entered an order dismissing certain claims and parties (Dk. 33). Judge Martinotti ruled that the Motion to Dismiss for Lack of Jurisdiction of Rushmore, Freddie Mac, WSFS and Pretium was denied but that the Motion for Judgment on the Pleadings was granted as to all FDCPA claims against Freddie Mac, WSFS and Pretium but not as to Rushmore. (Dk. 33). Further, the Motion for Judgment on the Pleadings was denied without prejudice as to Rushmore, Freddie Mac, WSFS and Pretium regarding the Fifth Count. (Dk. 33). As a result of Judge Martinotti's Order, the following claims remained at issue in this case as of April 30, 2018: FDCPA claims against Rushmore and NJCFA claims against Rushmore, Freddie Mac, WSFS and Pretium (Dk. 33).

Thereafter, on May 8, 2020, Rushmore, Freddie Mac, WSFS and Pretium filed a motion for summary judgment (Dks. 69, 70 and 71). On December 30, 2020, Judge Martinotti ruled that Plaintiffs' NJCFA claims against Rushmore, Freddie Mac, WSFS and Pretium were dismissed (Dk. 74). As a result of Judge Martinotti's ruling, the only remaining claims at this time are the FDCPA claims against Rushmore. (Dk. 74).

1

Thus, Rushmore files this Motion seeking dismissal of the remaining FDCPA claims against Rushmore.  Rushmore will rely on the Declaration of Anthony Younger, the Certification of Counsel including all other pleadings of record in this case as well as all relevant documents which are part of the public record[1] and on the docket of the Superior Court of New Jersey, Chancery Division, Ocean County, Docket No.: F-41681-14 captioned *Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as Trustee for Pretium Mortgage Acquisition Trust v. Sylvia Gonzalez Tobing, Richard Tobing, et al.* ("Foreclosure Action).

## **PROCEDURAL HISTORY**

Plaintiffs, Richard and Sylvia Tobing filed the instant action on or about January 24, 2017 in the United States District Court for the District of New Jersey under Case No.: 17-cv-00474 (the "District Court Action") (Dk. 1).  See **Certification of Counsel in Support of Motion for Summary Judgment ("Cert")** ¶21.

Rushmore, Freddie Mac, WSFS and Pretium filed their Answer in the District Court Action on or about May 15, 2017 (Dk. 8 and Cert. ¶22).

Rushmore, Freddie Mac, WSFS and Pretium filed their Motion for Judgment on the Pleadings on September 8, 2017 (Dk. 18 and Cert. ¶23)

The Tobings filed a Brief in Opposition to the Motion for Judgment on the Pleadings of Rushmore, Freddie Mac, WSFS and Pretium (Dk. 23 and Cert. ¶24).

Rushmore, Freddie Mac, WSFS and Pretium filed a Reply in Opposition to the Tobings' Opposition to their Motion for Judgment on the Pleadings on November 13, 2017 (Dk. 26 and Cert. ¶25).

---

[1] Courts may take judicial notice of documents which are part of the public record.  See *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000); F.R.E. 201(b); and *Citicorp Mortg., Inc. v. Pessin*, 238 N.J. Super. 606, 608 n.2, 570 A.2d 481 (App. Div.) (allowing judicial notice of recorded documents referenced in certifications, but not in the record), certif. denied, 122 N.J. 141, 584 A.2d 213 (1990).

On April 30, 2018, the Honorable Brian R. Martinotti issued an Opinion and Order regarding the Motion for Judgment on the Pleadings of Rushmore, Freddie Mac, WSFS and Pretium (Dk. 32 and 33 and Cert. ¶26).

Judge Martinotti ruled that Parker McCay was dismissed from this action (Dk. 33. and Cert. ¶27).

Judge Martinotti further ruled that the Motion to Dismiss for Lack of Jurisdiction of Rushmore, Freddie Mac, WSFS and Pretium was also denied but that their Motion for Judgment on the Pleadings was granted as to all FDCPA claims against Freddie Mac, WSFS and Pretium, but not Rushmore (Dk. 33 and Cert. ¶28).

Thus Following Judge Martinotti's ruling, the remaining claims in the case as of April 30, 2018 were the FDCPA claims against Rushmore and the NJCFA claims against Rushmore, Freddie Mac, WSFS and Pretium (Dk. 33 and Cert. ¶29).

Following Judge Martinotti's ruling, the parties engaged in extensive and prolonged settlement discussions to resolve this case and all issues between them, without success (Cert. ¶30).

Thereafter, Rushmore, Freddie Mac, WSFS and Pretium filed a Motion for Summary Judgment on May 8, 2020 (Dk. 67 and Cert. ¶31).

The Tobings filed a Brief in Opposition to the Motion for Summary Judgment, Certification in Opposition to Motion for Summary and Response to Statement of Material Facts and Counter-Statement of Material Facts not in dispute on June 1, 2020 (Dks. 69, 70 and 71 and Cert. ¶32).

Rushmore, Freddie Mac, WSFS and Pretium filed a Brief in Reply to Plaintiff's Opposition on June 8, 2020 (Dk. 72 and Cert. ¶33).

On December 30, 2020, the Honorable Brian R. Martinotti issued an Opinion and Order regarding the Motion for Summary Judgment of Rushmore, Freddie Mac, WSFS and Pretium (Dks. 73 and 74 and Cert. ¶34).

Judge Martinotti ruled that the Tobings' NJCFA claims against Rushmore, Freddie Mac, WSFS and Pretium were dismissed (See, Dk. 73 and Cert. ¶35).

Judge Martinotti further ruled that the Motion for Summary Judgment was denied without prejudice to renewal upon the completion of limited discovery with respect to the Tobings' FDCPA claims against Rushmore, and any other discovery deemed appropriate by the magistrate judge (See, Dk. 74 and Cert. ¶36).

Based upon Judge Martinotti's ruling, the remaining claims in the case are the FDCPA claims against Rushmore <u>only</u> (See, Dk. 73 and 74 and Cert. ¶37).

Pursuant to Judge Martinotti's ruling, Rushmore, Freddie Mac, WSFS and Pretium have provided responses to the limited discovery requested by counsel for the Tobings although the Tobings have provided no responses to the discovery requests of Rushmore (Cert. ¶38).

## <u>STATEMENT OF MATERIAL UNDISPUTED FACTS</u>

1.      Rushmore submits the following material undisputed facts.

2.      On October 30, 2007, Plaintiff Sylvia Gonzalez Tobing executed and delivered to Countrywide Bank, FSB ("Countrywide Bank") a Note, (the "note") in the amount of $417,000.00. **Declaration of Anthony Younger ("Dec.")** ¶2.  See Cert., ¶6, Exhibit ("Ex.") C, pp. 10-14.

3.      To secure the obligations under the note, Plaintiffs, Sylvia Gonzalez Tobing and Richard Tobing ("Tobings") executed and delivered to Countrywide Bank, a Mortgage (the "mortgage") dated October 30, 2007 and recorded on November 28, 2007 with the County Clerk

of Ocean County, New Jersey as Instrument # 2007152898 in OR Book 13848, Page 1837.  See Cert. ¶7, Ex. C, pp. 15-25.  Dec. ¶3.

4.      The mortgage secures the real property located at 78 Mill Pond Rd., Jackson, NJ 08527-4892 (the "Premises").    See Cert. ¶7, Ex. C, pp. 17, for the legal description of the Premises.  Dec. ¶4.

5.      The mortgage from Countrywide Bank, was assigned to Countrywide Home Loans Servicing, LP ("CHLS") by Assignment of Mortgage dated December 17, 2008 and recorded on January 6, 2009 with the County Clerk of Ocean County, New Jersey as Instrument # 2009001008 in OR Book 14182, Page 1672.  See Cert. ¶11, Ex. C, pp. 26-27.  Dec. ¶5.

6.      Thereafter, on May 27, 2014 the mortgage was assigned from Bank of America, N.A., successor by merger to BAC Home Loans Servicing, L.P. ("BANA") f/k/a CHLS to Federal Home Loan Mortgage Corporation ("Freddie Mac") by Assignment of Mortgage which was recorded on June 9, 2014 with the County Clerk of Ocean County, New Jersey as Instrument # 2014048792 in OR Book 15822, Page 628.  See Cert. ¶11, Ex. C, pp. 28-29.   Dec. ¶6.

7.      On August 15, 2014, Wilmington Savings Fund Society, FSB d/b/a Christiana Trust, not individually but as Trustee for Pretium Mortgage Acquisition Trust ("WSFS") and Rushmore executed a Base Servicing Agreement appointing Rushmore as the servicer for WSFS. A true copy of the servicing agreement is attached hereto as Ex. RMLS 1.  Dec. ¶7.

8.      On February 17, 2015, BANA sent a letter to Lender Placed Insurance indicating that as of May 1, 2015, the servicing of this account would be transferred to Rushmore.  A true copy of the February 17, 2015 letter is attached hereto as Ex. RMLS 2.  Dec. ¶8.

9.      On February 19, 2015, WSFS executed a Limited Power of Attorney appointing Rushmore, its servicer, pursuant to the Base Servicing Agreement, as its limited power of attorney.    A true copy of the power of attorney is attached hereto as Ex. RMLS 3.  Dec. ¶9.

10.     On March 19, 2015, BANA and BofA Merrill Lynch Asset Holdings, Inc. sold the loan at issue to Pretium Mortgage Credit Partners I Loan Acquisition, LP ("Pretium"), pursuant to a Mortgage Loan Purchase and Interim Servicing Agreement.  Dec. ¶10.

11.     On April 10, 2015, BANA sent a notice to plaintiff, Sylvia Gonzalez Tobing advising that the servicing of her home loan would transfer to Rushmore on May 1, 2015.  A true copy of the April 10, 2015 notice is attached hereto as Ex. RMLS 4.  Dec. ¶11.

12.     On April 23, 2015 Rushmore sent a Notice of Sale of Ownership of Mortgage Loan to plaintiff Sylvia Gonzalez Tobing.  The notice confirmed that plaintiff's mortgage loan was sold to WSFS on March 19, 2015.  A true copy of the April 23, 2015 notice is attached hereto as Ex. RMLS 5.  Dec. ¶12.

13.     On May 14, 2015, Rushmore sent a subsequent Notice of Assignment, Sale or Transfer of Servicing to plaintiff, Sylvia Gonzalez Tobing confirming that the servicing of her mortgage loan was assigned, sold or transferred from BANA to Rushmore effective May 1, 2015.  A true copy of the May 14, 2015 notice is attached hereto as Ex. RMLS 6.  Dec. ¶13.

14.     The mortgage was subsequently assigned effective June 1, 2015 by Freddie Mac to BANA by Assignment of Mortgage which was recorded on June 27, 2016 with the County Clerk of Ocean County, New Jersey as Instrument # 2016062104 in OR Book 16430, Page 1210. See recorded Assignment at Dk. 18-6, pp.14-16.Dec. ¶14.

15.     The mortgage was assigned by BANA f/k/a CHLS to Pretium pursuant to that certain Corporation Assignment of Mortgage dated June 15, 2015 and recorded with the County Clerk of Ocean County, New Jersey as Instrument # 2016062105 in OR Book 16430, Page 1213 on June 27, 2016.  See Cert. ¶11, Ex. C, pp. 33-34. See recorded Assignment at Dk. 18-6, p. 19. Dec. ¶15.

16.    Thereafter, said mortgage was assigned by Pretium to WSFS pursuant to that certain Assignment of Mortgage dated October 18, 2015 and recorded with the County Clerk of Ocean County, New Jersey as Instrument # 2016062170 in OR Book 16430, Page 1510 on June 27, 2016.  See Cert. ¶11, Ex. C, pp. 35-38.  See recorded Assignment at Dk. 18-6, pp. 22-24. Dec. ¶16.

17.    Based upon the foregoing, WSFS properly held in its possession the original mortgage and note and Rushmore, as the servicer for WSFS, since March 19, 2015 had every right to act on behalf of WSFS and send mortgage statements to the Plaintiffs at all relevant times including but not limited to July 1, 2016.   Dec. ¶17.

18.    This court has already addressed certain facts in its opinion of December 30, 2020 (Dk. 73) as follows:

> The following facts are undisputed unless otherwise indicated. This action arises from Plaintiffs' purchase of their home in Jackson, New Jersey (the "Premises"). (*See* ECF No. 67-26 ¶3; ECF No. 71 ¶¶1–2.) To secure the purchase of the Premises, on October 30, 2007, Plaintiff Sylvia Tobing executed and delivered to Countrywide Bank, FSB ("Countrywide Bank") a note (the "Note") in the amount of $417,000.00. (ECF No. 67-26 ¶¶3–4; ECF No. 71 ¶2.) To secure the obligations under the Note, Plaintiffs executed and delivered to Countrywide Bank a mortgage (the "Mortgage") dated October 30, 2007. (*Id.*) On December 22, 2008, Countrywide Bank assigned the Note and Mortgage to Countrywide Home Loan Servicing LP ("Countrywide Home"). Thereafter, Bank of America, N.A. ("BOA") became successor by merger to BAC Home Loans Servicing, LP formerly known as Countrywide Home. (ECF No. 67-26 ¶9; ECF No. 71 ¶3.) On May 27, 2014, BOA assigned the Note and Mortgage to Freddie Mac. (ECF No. 67-26 ¶7;  ECF  No. 71 ¶4.)  On October 3, 2014, Freddie Mac filed a foreclosure complaint (the "Foreclosure Complaint") against Plaintiffs in the Superior Court of New Jersey, Chancery Division, Ocean County ("State Court") under Docket No. F-41681-14 seeking to foreclose Plaintiffs' interest in the Premises (the "Foreclosure Action"). (ECF No. 67-2 at 2.) On November 13, 2014, Plaintiffs filed an answer to the Foreclosure Complaint. (ECF No. 67-3.) Thereafter, Freddie Mac assigned the Mortgage back to BOA, although the parties dispute whether this took place on June 1, 2015, or August 17, 2015. Plaintiffs allege, "[t]he original mortgage assignment was dated on or about August 17, 2015, which was the effective, legal date of the assignment, but at some point it was 'backdated' in an after-the-fact

attempt to make it effective as of June 1, 2015," to allegedly proceed with the following assignments. (ECF No. 1 ¶ 19.) On June 15, 2015, BOA assigned the Mortgage to Pretium when, according to Plaintiffs, "it had no right" to the Mortgage and Note because the Mortgage and Note was not "assigned to BOA until on or about August 17, 2015 and any attempt to backdate and make the assignment effective as of June 1, 2015 was invalid and without legal effect." (*Id.* ¶ 25.) On October 8, 2015, Pretium assigned the Mortgage to Wilmington. (ECF No. 67-26 ¶ 7; ECF No. 71 ¶ 7.) On June 21, 2016, Freddie Mac filed a motion for summary judgment, a motion to strike Plaintiffs' amended answer, and a motion to substitute Wilmington for Freddie Mac. (ECF No. 67-4 at 119.) On July 14, 2016, Plaintiffs filed an opposition to Freddie Mac's motion for summary judgment. (ECF No. 67-5 at 80.) On July 22, 2016, the State Court granted summary judgment in favor of Freddie Mac, ordered the clerk of the court to enter default against Plaintiffs, and substituted Wilmington for Freddie Mac. (ECF No. 67-7 at 2–3.) Thereafter, on February 3, 2017, Freddie Mac filed a motion for entry of judgment in the Foreclosure Action and Plaintiffs opposed. (ECF No. 67-8 at 2.) On June 15, 2017, a final judgment was granted and entered in favor of Wilmington. (ECF No. 67-9 at 3.) Following a sheriff's sale of the Premises that took place on February 12, 2019, and a writ of possession issued on April 17, 2019, to Wilmington, Plaintiffs were ordered to evict the Premises. (ECF No. 67-10.)

19.      Rushmore brings the present Motion for dismissal of the remaining FDCPA claims against it.  See, Cert. ¶39.

## LEGAL ARGUMENT

### I.      RUSHMORE IS ENTITLED TO SUMMARY JUDGMENT DISMISSING THIS CASE WITH PREJUDICE

#### A.      LEGAL STANDARD

Rushmore relies upon this court's recitation of the legal standard as set forth in the court's order of December 30, 2020 which provides in pertinent part:

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.  Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

**B.**     **RUSHMORE DID NOT VIOLATE THE FAIR**
           **DEBT COLLECTION PRACTICES ACT**

The Fair Debt Collection Practices Act ("FDCPA") "is a consumer protection statute that prohibits certain abusive, deceptive, and unfair debt collection practices." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 133 S.Ct. 1166, 1171 n. 1, 185 L.Ed.2d 242 (2013) (citing 15 U.S.C. § 1692). The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors" while insuring that "debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692.  Additionally, the FDCPA prohibits the use of any "false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

To state a claim under the FDCPA, plaintiffs must establish that (1) they are 'consumers' who were harmed by violations of the FDCPA; (2) the 'debt' arises out of a transaction entered into primarily for personal, family, or household purposes; (3) Rushmore is a 'debt collector'; and (4) Rushmore has violated, by act or omission, a provision of the FDCPA in an attempt to collect a 'debt'.   15 U.S.C. §§ 1692a-1692o.

The entirety of the Tobings' remaining claims against Rushmore focus on only the following operative facts from their Complaint:

> 28.     All efforts of Rushmore to collect on the mortgage and note within the last year (and prior thereto) on behalf of Wilmington were false, misleading and fraudulent because the mortgage and note had not been validly assigned to Wilmington. For example, in June of 2016 Rushmore sent plaintiffs a mortgage statement demanding payment of $337,875.28 on behalf of Wilmington. See Mortgage Statement, annexed as Exhibit C to the Complaint herein [Dk. 1].  At the time Rushmore sent this letter, plaintiffs were not indebted to Wilmington.

Dk. 1 ¶28.

10

Tobings' claims against Rushmore in counts I through IV of the Complaint focus entirely on the fact that in June of 2016, "Rushmore sent plaintiffs a mortgage statement demanding payment of $337,875.28 on behalf of Wilmington. See mortgage statement, annexed as Exhibit C to the Complaint…" Dk. 1, p. 29.

As a result, the Tobings incorrectly conclude the following:

> 1)     in count I of the Complaint, that Rushmore violated section 1692d of the FDCPA which prohibits debt collectors from engaging in any conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt because WSFS did not hold a valid assignment of the mortgage and note.  Therefore, Tobings conclude that "efforts by its service provider, Rushmore, to collect on the note and mortgage constituted harassment and abuse." Dk. 1.

> 2)      in count II, that the same conduct violates section 1692e which prohibits debt collectors from making false or misleading representations or deceptive means to collect a debt or to obtain information from a consumer;

> 3)     in count III that the same conduct violates section 1692e(10) which prohibits debt collectors from using false representations or deceptive means to collect a debt or to obtain information from a consumer; and

> 4)     in count IV, that the same conduct violates section 1692f which prohibits debt collectors from using unfair or unconscionable means to collect or attempt to collect an alleged debt.

Dk. 1, ¶¶41, 49, 51, 59, 61 and 69.

Tobings' sole assertion is that Rushmore mailed a mortgage statement to the Tobings which constitutes a violation of the FDCPA because the assignment of mortgage in August 2015 allegedly invalidated the chain of assignments and therefore, Rushmore did not have the right to send the mortgage statement to the Tobings.  Dk. 1, ¶28.

The Tobings assert that "[g]iven that Wilmington did not hold a valid assignment of the Note and Mortgage", Rushmore's mailing a mortgage statement to the Tobings, constituted a violation of Section 1692 of the FDCPA.  See, Dk. 1, ¶¶38, 39, 48, 49, 58, 59, 68 and 69.   In addition, Tobings claim that the reason the assignment is invalid is because "[t]he original

11

assignment from Freddie Mac to BOA was dated on or about August 17, 2015 and apparently "back dated" to June 1, 2015.  See, Dk. 1, ¶19.

Rushmore asserts that the contentions and allegations of the Tobings are wholly without merit for each of the following reasons.

### 1.   RUSHMORE HAD THE RIGHT TO MAIL MORTGAGE STATEMENTS TO THE TOBINGS

On December 30, 2020, the Honorable Brian R. Martinotti issued an Order and Opinion regarding the motion for summary judgment filed by Rushmore, Freddie Mac, WSFS and Pretium on May 8, 2020 (Dk. 73 and 74).  The court granted the motion for summary judgment as to all claims with the exception of the Plaintiff's FDCPA claim against Rushmore.  Further, Judge Martinotti opined that the Court would permit limited discovery on the issue of whether the mortgage at issue was properly assigned to WSFS and therefore whether Rushmore was owed the purported debt that it sought to collect from Plaintiffs through its monthly invoices.

Rushmore has provided discovery to Plaintiffs although Plaintiffs have not reciprocated. Rushmore submits that it has provided sufficient proof that the mortgage and note at issue were sold to WSFS and that Rushmore was the servicer for WSFS at all relevant times herein.  Dec. ¶7.  As such, Rushmore is permitted to act on its behalf to invoice the Plaintiffs and collect the monthly mortgage payments from Plaintiffs.   Dec. ¶17.

On August 15, 2014, Pretium and Rushmore executed a Base Servicing Agreement appointing Rushmore as the servicer for WSFS. A true copy of the servicing agreement is attached to the Dec. ¶7, Ex. RMLS 1.   Pursuant to the Base Servicing Agreement, Rushmore was appointed as the servicer of various loans.  Specifically, Section 3.02 of the Base Servicing Agreement provides in relevant part:  "[T]he Servicer shall proceed diligently and consistent with the terms of this Agreement and Specified Servicing Practices to collect all payments due under each Asset when the same shall become due and payable…"  Dec. ¶7, Ex. RMLS 1.

On February 17, 2015, BANA sent a letter to Lender Placed Insurance indicating that as of May 1, 2015, the servicing of this account would be transferred to Rushmore.  See, Dec. ¶8, Ex. RMLS 2.

On February 19, 2015, WSFS executed a Limited Power of Attorney appointing and authorizing Rushmore, its servicer pursuant to the Base Servicing Agreement, "to execute and acknowledge in writing or by facsimile stamp all documents customarily and reasonably necessary and appropriate for the tasks described in the items (1) through (5) below …" See, Dec. ¶9, Ex. RMLS 3.

On March 19, 2015, BANA and BofA Merrill Lynch Asset Holdings, Inc. sold the loan at issue to Pretium, pursuant to a Mortgage Loan Purchase and Interim Servicing Agreement.

On April 10, 2015, BANA sent a notice to plaintiff, Sylvia Gonzalez Tobing advising that the servicing of her home loan would transfer to Rushmore on May 1, 2015.  See, Dec. ¶11, Ex. RMLS 4.

On April 23, 2015 Rushmore sent a Notice of Sale of Ownership of Mortgage Loan to plaintiff Sylvia Gonzalez Tobing.  The notice confirmed that plaintiff's mortgage loan was sold to WSFS on March 19, 2015.  See, Dec. ¶12, Ex. RMLS 5.

On May 14, 2015, Rushmore sent a subsequent Notice of Assignment, Sale or Transfer of Servicing to plaintiff, Sylvia Gonzalez Tobing confirming that the servicing of her mortgage loan was assigned, sold or transferred from BANA to Rushmore effective May 1, 2015.  See, Dec. ¶13, Ex. RMLS 6.

The mortgage was subsequently assigned on August 17, 2015 effective June 1, 2015 by Freddie Mac to BANA by Assignment of Mortgage.  See, Dec. ¶14.  See recorded Assignment at Dk. 18-6, pp. 14-16.

The mortgage was assigned by BANA f/k/a CHLS to Pretium pursuant to that certain Corporation Assignment of Mortgage dated June 15, 2015 and recorded on June 27, 2016.  See, Cert. ¶11.  See recorded Assignment at Dk. 18-6, p. 19.

Thereafter, said mortgage was assigned by Pretium to WSFS pursuant to that certain Assignment of Mortgage dated October 18, 2015 and recorded on June 27, 2016.  See, Cert. ¶11. See recorded Assignment at Dk. 18-6, pp. 22-24.

The Tobings allege that the assignment in August 2015, which is backdated to June 1, 2015, is deficient.  However, the chain of recorded assignments is not dispositive.  The purpose of recording assignments is to serve as notice to third parties of its existence.  *Rose v. Rein,* 116 N.J. Eq. 70, 74, 172 A. 510 (E & A 1934). There is no question of fact in this case that at the time of the mailing of the monthly statement in June 2016 by Rushmore, the note and mortgage were in the possession of Rushmore.  See, Dec. ¶17, and Cert. Ex. C, p. 7, ¶15.

It is the general rule that a party seeking to enforce a mortgage must own or control the underlying debt. *New Century Financial Services, Inc. v. Oughla*, 437 N.J. Super. 299, 314 (App. Div. 2014) citing, *Wells Fargo Bank, NA v. Ford,* 418 N.J. Super. 592 (App. Div. 2011). At the time of the June 21, 2016 motion for summary judgment in the Foreclosure Action, all assignments of the mortgage and note had been executed and submitted for recording.  See, Cert. Ex. C, p. 7, ¶15, which is the Certification of Kevin Elliott, Senior Vice President of Rushmore filed in the Foreclosure Action.  Mr. Elliott's certification establishes that Rushmore was a "person entitled to enforce" an instrument under New Jersey law since the note and mortgage were in the possession of Rushmore at the time of the mailing of the mortgage statement.  Cert. Ex. C, p. 7, ¶15.  In fact, the court in the Foreclosure Action relied on that Certification in entering judgment in favor of WSFS and against the Tobings. See, Cert. ¶16 and Ex. H.

14

The applicable provision governing enforcement of a note such as the one at issue in this case is N.J.S.A. 12A:3-301 which provides as follows:

> Person entitled to enforce" an instrument means the holder of the instrument, a nonholder in possession of the instrument who has the rights of a holder, or a person not in possession of the instrument who is entitled to enforce the instrument pursuant to 12A:3-309 or subsection d. of 12A:3-418. A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

Pursuant to N.J.S.A. 12A:3-301, WSFS was the holder of the note and mortgage.  In fact, WSFS had been in possession of the note and mortgage since March 19, 2015. See, Dec. ¶17 and Cert. Ex. C, p. 7, ¶15.  Rushmore, as the servicer of the note and mortgage is also the holder by reason of the rights granted to it under the Base Servicing Agreement (Dec. ¶7, Ex. RMLS 1) and the Power of Attorney (Dec. ¶9, Ex. RMLS 3).  At the very least, Rushmore is protected by N.J.S.A. 12A:3-301 as "a nonholder in possession of the instrument who has the rights of a holder." N.J.S.A. 12A:3-301. There is no evidence to refute the representations of Rushmore that the note and mortgage were at all times in its possession.  See, Dec. ¶17.  Moreover, the certification of Kevin Elliott, Senior Vice President of Rushmore, in the Foreclosure Action makes clear that at the time WSFS retained the services of Rushmore to conclude the already commenced Foreclosure Action, the note and mortgage were assigned to WSFS and Rushmore had "the rights of a holder."  See, Cert. Ex. C, p. 7, ¶15.

Thus, Rushmore, either as a holder or non-holder of the note and mortgage, was the  loan servicer and a "person entitled to enforce" the note and mortgage under N.J.S.A. 12A:3–301.

There is no evidence that the transfer of the note and mortgage was ineffective.  Transfer of an instrument occurs "when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." N.J.S.A. 12A:3–203(a). Such a delivery, "whether or not the transfer is a negotiation, vests in the transferee any

15

right of the transferor to enforce the instrument." N.J.S.A. 12A:3–203(b). The UCC Comment explains this subsection:

> If the transferee is not a holder because the transferor did not indorse, the transferee is nevertheless a person entitled to enforce the instrument under section 3–301 if the transferor was a holder at the time of transfer. Although the transferee is not a holder, under subsection (b) the transferee obtained the rights of the transferor as holder.

[UCC Comment 2 to N.J.S.A. 12A:3–203.]  In the present matter, there was no question that the note and mortgage were in the possession of Rushmore at the time of substitution of counsel and the entry of summary judgment in the Foreclosure Action on July 22, 2016 since all of the uncontradicted evidence indicates that since March 19, 2015 and at all relevant times, Rushmore was in possession of the note and mortgage.  See, Dec. ¶17, and Cert. Ex. C, p. 7, ¶15.

Therefore, Rushmore respectfully submits that, even if seen in the light most favorable to the Tobings, the incontrovertible facts on the record clarify that Rushmore, as servicer for WSFS, had the right to act on its behalf with regard to the servicing of the note and mortgage. Therefore, since it did nothing more than send a monthly statement to plaintiffs with regard to a delinquent note and mortgage regarding which plaintiffs had continually received notices, there is no violation of the FDCPA[2].  There is no genuine issue of material fact for trial and the case must be dismissed

## 2.    RUSHMORE HAD THE OBLIGATION TO MAIL MORTGAGE STATEMENTS TO THE TOBINGS

The Tobings cannot succeed on their remaining FDCPA claims against Rushmore because Rushmore has done nothing to violate the FDCPA. The actual mortgage statement itself,

---

[2] See also, *Dixon v. Stern & Eisenberg, P.C.*, *No. 5:14-CV-4551, 2015 U.S. Dist. LEXIS 80663,2015 WL 3833782, at *10 (E.D. Pa. June 22, 2015), aff'd sub nom,* 652 Fed. Appx. 128 (3rd Cir. 2016) in which the court held the issue of the validity of the assignments had already been decided in the underlying foreclosure action in which a final judgment in favor of the holder of the note had determined the assignment issue.  So too in this case has the Chancery Division decided the validity of the assignments in the Foreclosure Action.  Cert. ¶16 and Cert. Ex. H.

which is the purportedly violative communication, does not in any way violate the FDCPA  See, Dk. 1, pp. 29-33.

The mortgage statement does not violate section 1692d of the FDCPA by harassing, oppressing or abusing the Tobings in connection with the collection of a debt; does not violate section 1692e by making false or misleading representations or using deceptive means to collect a debt or to obtain information from a consumer; does not violate section 1692e(10) by using false representations or deceptive means to collect a debt or to obtain information from a consumer; and does not violate section 1692f by using unfair or unconscionable means to collect or attempt to collect an alleged debt.  There can be no dispute that the mailing of the mortgage statement is not designed to oppress, deceive, or harass.

In fact, to the contrary, the mailing of monthly mortgage statements such as the one at issue in this case is a requirement under the Truth in Lending Act ("TILA").  Regulation Z of TILA mandates that mortgage servicers provide monthly mortgage statements containing information including the amount due, details of past payment, and mortgage-servicer contact information. *See* 12 *C.F.R.* §1026.41. In fact, the Consumer Financial Protection Bureau (the "CFPB"), which administers the FDCPA, issued a bulletin expressly stating that a "servicer acting as a debt collector would not be liable under the FDCPA for complying with these requirements..." Implementation Guidance for Certain Mortgage Servicing Rules, 10152013 CFPB GUIDANCE, 2013 WL 9001249 (C.F.P.B. Oct. 15, 2013) (emphasis added).

Rushmore sent the Tobings periodic statements, including the operative one in June 2016, pursuant to Regulation Z. See, 12 C.F.R. § 1026.41.  Under the applicable regulations, "[a] servicer . . . shall provide the consumer, for each billing cycle, a periodic statement" that contains, inter alia:

17

> (i) The monthly payment amount, including a breakdown
> showing how much, if any, will be applied to principal, interest,
> and escrow . . . ;
> (ii) The total sum of any fees or charges imposed since the last
> statement; and
> (iii) Any payment amount past due.

12 C.F.R. § 1026.41(d)(2)(i)-(iii).   Additionally, the periodic statements must include "the

amount of the outstanding principal balance" and "the current interest rate in effect for the

mortgage loan." Id., 12 C.F.R. § 1026.41(d)(7)(i)-(ii).

The monthly statement provided by Rushmore was required to be sent under 15

U.S.C. § 1638(f) and contained the information required under 12 C.F.R. § 1026.41.   It

would be an absurdity for Congress to require Rushmore to provide periodic statements to

Plaintiff under TILA, while also exposing Rushmore to liability under the FDCPA for complying

with a Federal regulation.   There is nothing in the monthly statement which can be remotely

considered violative of the FDCPA, nor is anything in it so pled by the Tobings.

In *Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559 (D.N.J. 2016), the court noted

that the CFPB, dealt with this issue in response to questions raised by servicers like Rushmore

which required clarity in dispensing their obligations under the mandatory statement provisions

of TILA.  *Id.* at 589.   The CFPB therefore issued a guidance letter stating in relevant part:

> [1] "that the FDCPA 'cease communication' option does not
> generally make servicers that are debt collectors liable under the
> FDCPA if they comply with certain provisions of Regulation Z (...
> [including 12 C.F.R. §] 1026.41 (periodic statement))[;] ... [and]
> [2] that a servicer that is considered a debt collector under the
> FDCPA with respect to a borrower that provides disclosures to and
> communicates with the borrower pursuant to [12 C.F.R. § 1026.41]
> ..., notwithstanding a 'cease communication' instruction sent by the
> borrower, is not liable under the FDCPA."

*Id.*, citing, Implementation Guidance for Certain Mortgage Servicing Rules, 10152013

CFPBGUIDANCE, 2013 CFPB Guidances LEXIS 12, 2013 WL 9001249 (C.F.P.B. Oct. 15,

2013).   The court also relied upon *Hill v. DLJ Mortg. Capital, Inc.,* 2016 U.S. Dist. LEXIS 138526 (E.D.N.Y. 2016).

The *Block* court adopted the *Hill* court's reasoning that periodic mortgage statements, like the monthly statement in our case, for each billing cycle under 12 C.F.R. § 1026.41 "are specifically mandated by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank Act) [Public Law 111-203, sec. 1420, 124 Stat. 1376 (2010) 13], which makes no mention of their potential cessation under the FDCPA and presents a more recent and specific statement of legislative intent regarding th[o]se disclosures than does the FDCPA[,] ... [and] that th[o]se notices provide useful information to consumers regardless of their collections status." Id. at 589-590, citing, 2016 U.S. Dist. LEXIS 138526, [WL] at *8 (quoting Implementation Guidance, 2013 CFPB Guidances LEXIS 12 (C.F.P.B. Oct. 15, 2013) ).

The *Block* court agreed with the court in *Hill* that even where the debtor demands that the debt collector cease and desist from further communications, the provisions of the FDCPA do not nullify or supersede Congress's "more specific and subsequent mandate" set forth in the Dodd Frank Act.  *Id*. at 590.  Based on this analysis, the *Block* court dismissed the FDCPA claims against the servicer resulting from its providing monthly loan statements to plaintiff.  *Id.*

Accordingly, since the document which is claimed to have been in violation of the FDCPA is required to be sent to debtors under the Dodd-Frank Act, and the communication is in no way 'false or misleading', 'unfair or unconscionable' or otherwise violative of the FDCPA, the court should enter summary judgment in favor of Rushmore dismissing the complaint in its entirety against it, with prejudice.

### 3.    RUSHMORE'S ACTIONS DID NOT VIOLATE THE FDCPA

The court in *Jensen v. Pressler & Pressler*, 791 F.3d 413, 418 (3d Cir. 2015) succinctly outlined the standard underlying the FDCPA as follows:

As the FDCPA is an explicitly remedial statute, passed by Congress "to eliminate abusive debt collection practices by debt collectors," *15 U.S.C. §1692(e)*, "we construe its language broadly, so as to effect its purpose[,]" *Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006)* (citation omitted). Courts routinely employ a "least sophisticated debtor" standard when deciding if debt collection violates the FDCPA. *See Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008)* ("We use the 'least sophisticated debtor' standard in order to effectuate 'the basic purpose of the FDCPA . . . .'" (quoting *Brown, 464 F.3d at 454*)). Although the least sophisticated debtor standard is "lower than the standard of a reasonable debtor," it "preserv[es] a quotient of reasonableness and presum[es] a basic level of understanding and willingness to read with care." *Id.* (quoting *Wilson v. Quadramed Corp., 225 F.3d 350, 354-55 (3d Cir. 2000))*. In so doing, it "give[s] effect to the Act's intent to 'protect[] the gullible as well as the shrewd.'" *Campuzano-Burgos v. Midland Credit Mgmt., Inc., 550 F.3d 294, 298 (3d Cir. 2008)* (second alteration in original) (quoting *Brown, 464 F.3d at 453*).

Rushmore submits that even under the 'least sophisticated debtor' standard, courts would not find any of the actions by Rushmore to violate the FDCPA. In *Jensen*, the court found that "[w]hatever might or might not have occurred concerning the technicalities of the assignment to [the holder of the note] is not material under the circumstances of this case." *Jensen v. Pressler & Pressler*, 791 F.3d at 420-21 (3d Cir. 2015) citing, *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755 (7th Cir. 2009)(a statement cannot mislead unless it is material). See also, *Dixon v. Stern & Eisenberg, P.C.*, *No. 5:14-CV-4551, 2015 U.S. Dist. LEXIS 80663, 2015 WL 3833782, at *10 (E.D. Pa. June 22, 2015), aff'd sub nom,* 652 Fed. Appx. 128 (3rd Cir. 2016) and, *Potoczny v. Aurora Loan Servs., LLC*, 33 F. Supp. 3d 554 (E.D. Pa. 2014).

Accordingly, as in *Jensen,* the mailing of the mortgage statement did not violate section 1692e. However, the same analysis applies to the alleged violations under 1692d (harassing, oppressing or abusing one in connection with the collection of a debt); 1692e(10) (using false representations or deceptive means to collect a debt or to obtain information from a consumer); and 1692f (using unfair or unconscionable means to collect or attempt to collect an alleged debt).

The Tobings do not, and cannot, state or offer any evidence[3] that they were harassed or abused or the victims of unfair or unconscionable conduct.  Nor can they or do they assert that Rushmore used false or deceptive means to collect a debt.

The only allegation in this case is that because of the backdating of an assignment, Rushmore did not have the right to send the mortgage statement to the Tobings.  This is false.  Again, Rushmore was the legal holder of the note and mortgage at all relevant times.   Dec. ¶17, and Cert. Ex. C, p. 7, ¶15.  Further, Rushmore was dispensing an obligation under TILA and the Dodd-Frank Act and is accused of no other conduct.

As a result of the mailing of the mortgage statement, the Tobings did not attempt to send mortgage payments (that they undeniably owed) to some other entity or were concerned they would have to satisfy the same obligation to multiple parties.  In short, the Tobings were not in any way deceived, defrauded, harassed or oppressed by the mailing.  The remaining FDCPA claims against Rushmore should be dismissed with prejudice.

## III.   **CONCLUSION**

Based upon the foregoing, it is respectfully requested that this Court grant summary judgment in favor of defendants, Rushmore Loan Management Services, LLC dismissing all claims against it with prejudice.

Dated:  April 29, 2021

By: */s/ Michael F.J. Romano, Esquire*
Michael F.J. Romano, Esquire
ROMANO, GARUBO & ARGENTIERI
52 Newton Avenue, PO Box 456
Woodbury, NJ 08096
PH: (856) 384-1515
Email: mromano@rgalegal.com
Attorney for Defendant, Rushmore Loan Management Services, LLC

---

[3] As of the date of filing this motion for summary judgment, the Tobings had provided no responses to discovery.