**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD TOBING, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> PARKER McCAY, P.A., *et al.*, <br><br> Defendants. | Civil Action No. 17-474 (ZNQ) (DEA) <br><br> **MEMORANDUM OPINION** |

**QURAISHI, District Judge**

This matter comes before the Court upon a Motion for Summary Judgment filed by Defendant Rushmore Loan Management, LLC's ("Rushmore"). (the "Motion," ECF No. 81.) Rushmore submitted a Brief in Support of the Motion. ("Moving Br.," ECF No. 81-20.) Richard and Sylvia Tobing (collectively "Plaintiffs") opposed the Motion, ("Opp'n Br.," ECF No. 83), to which Rushmore replied, ("Reply Br.," ECF No. 88.) The Court carefully considered the parties' arguments and decided the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Motion is granted. Summary judgment will be entered in favor of Rushmore as to all remaining claims.

**I.    BACKGROUND**

The following facts are undisputed unless otherwise noted. On October 30, 2007, Plaintiff Sylvia Tobing executed and delivered to Countrywide Bank, FSB ("Countrywide Bank"), a note (the "Note") in the amount of $417,000. (Defendant's Statement of Material Facts, "DSMF" ¶ 2,

ECF No. 81-20.)  To secure the Note, Plaintiffs executed and delivered to Countrywide Bank a mortgage (the "Mortgage") on their New Jersey home on the same day.  (DSMF ¶¶ 3–4.)

In 2008, Countrywide Bank assigned the Mortgage to Countrywide Home Loans Servicing, LP ("CHLS").  (DSMF ¶ 5.)  Thereafter, Bank of America, N.A. ("BOA"), became successor by merger to BAC Home Loans Servicing, LP ("BANA"), which was formerly known as CHLS.  (*Id.*)  On May 27, 2014, BOA assigned the Mortgage to Federal Home Loan Mortgage Corporation ("Freddie Mac").  (DSMF ¶ 6.)

On October 3, 2014, Freddie Mac filed a foreclosure complaint (the "Foreclosure Complaint") against Plaintiffs in the Superior Court of New Jersey, Chancery Division, Ocean County ("State Court"), under Docket No. F-41681-14 seeking to foreclose Plaintiffs' interest in the home (the "Foreclosure Action").  (DSMF ¶ 18; ECF No. 73 at 2.)  On November 13, 2014, Plaintiffs filed an answer to the Foreclosure Complaint. (DSMF ¶ 18; ECF No. 73 at 2.)

During the pendency of the Foreclosure Action, BANA and BOA sold the loan to Pretium Mortgage Credit Partners I Loan Acquisition, LP ("Pretium"), on March 19, 2015.  (DSMF ¶ 10.) On April 10, 2015, BANA notified Sylvia Tobing that the servicing of her home loan would transfer to Rushmore on May 1, 2015. (DSMF ¶ 11.)  On April 23, 2015, Rushmore notified Sylvia Tobing by sending her a Notice of Sale of Ownership of Mortgage Loan.[1]  (DSMF ¶ 12.)  On May 14, 2015, Rushmore also sent Sylvia Tobing a Notice of Assignment, Sale, or Transfer of Servicing to confirm that the servicing of her mortgage loan was assigned, sold, or transferred from BANA to Rushmore effective May 1, 2015.  (DSMF ¶ 13.)

---

[1] Wilmington Savings Fund Society, FSB ("WSFS") (d/b/a Christiana Trust)—acting as Trustee for Pretium Mortgage Acquisition Trust—and Rushmore had executed a Base Servicing Agreement on August 15, 2014, appointing Rushmore as the servicer for WSFS.  (DSMF ¶ 7.)  On February 17, 2015, BANA sent a letter to Lender Placed Insurance indicating that the servicing of the account would be transferred to Rushmore as of May 1, 2015.  (DSMF ¶ 8.)  Two days later, WSFS executed a Limited Power of Attorney appointing Rushmore, its servicer, as its limited agent.  (DSMF ¶ 9.)

Soon after, Freddie Mac assigned the Mortgage back to BOA/BANA; however, the parties dispute whether this took place on June 1, 2015, or August 17, 2015. (DSMF ¶ 14; Plaintiffs' Statement of Material Facts, "PSMF" ¶ 5, ECF No. 84.) On June 15, 2015, BOA/BANA assigned the Mortgage to Pretium pursuant to the Corporation Assignment of Mortgage dated June 15, 2015. (PSMF ¶ 5.) On October 8, 2015, Pretium assigned the Mortgage to WSFS. (PSMF ¶ 6.)

At some point thereafter, Rushmore started sending monthly mortgage statements to Plaintiffs. (PSMF ¶ 9.) The statements included the following phrase: "Rushmore Loan Management Services, LLC is a Debt Collector who is attempting to collect a debt." (*Id.*) The statement also included a "Delinquency Notice" stating, "[y]ou are late on your mortgage payments. Failure to bring your loan current may result in fees and foreclosure—the loss of your home." (*Id.*) At least one statement advised, "Your loan is in foreclosure." (*Id.*) The parties dispute whether Rushmore sent the statements and the contents of the statements. (*See* Reply Br. at 1.)

On June 21, 2016, Freddie Mac filed several motions in the Foreclosure Action, including a motion to substitute Freddie Mac for WSFS, a motion for summary judgment, and a motion to strike Plaintiffs' answer and separate defenses. (DSMF ¶ 18; ECF No. 73 at 3.) In support of the motion to strike Plaintiffs' amended answer, Kevin Elliot, Senior Vice President of Rushmore, certified that WSFS's possessed the original mortgage note since March 19, 2015. (PSMF ¶ 8.) However, Plaintiffs contend BOA certified in answers to interrogatories that Freddie Mac or its authorized agent had possession of the original mortgage note. (*Id.*). In addition, Plaintiffs claim they inspected what purported to be the original note and mortgage at the office of Freddie Mac's counsel on May 20, 2016. (*Id.*) Rushmore disputes the certification and inspection of the documents. (Reply Br. at 1.)

On July 22, 2016, the State Court substituted Freddie Mac for WSFS, granted summary judgment in favor of Freddie Mac, and ordered the court clerk to enter default against Plaintiffs. (DSMF ¶ 18, ECF No. 73 at 3.)  On February 3, 2017, Freddie Mac filed a motion for entry of judgment in the Foreclosure Action.  (DSMF ¶ 18, ECF No. 73 at 3.)  On June 15, 2017, a final judgment was granted and entered in favor of WSFS. (DSMF ¶ 18; ECF No. 73 at 3.)  Following a sheriff's sale of the home on February 12, 2019, and issuance of a writ of possession to WSFS, Plaintiffs were ordered to evict the home.  (DSMF ¶ 18; ECF No. 67-10.)

In the meantime, on January 24, 2017, Plaintiffs had filed a complaint (the "Complaint") in the District Court of New Jersey alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), and the New Jersey Consumer Fraud Act, N.J. Stat. Ann. 58:8-1, *et seq.* ("NJCFA").  (ECF No. 1.)  On April 30, 2018, this Court dismissed the FDCPA claims against all defendants except Rushmore.  (ECF No. 33.)  On December 30, 2020, this Court dismissed the NJCFA claims against all defendants including Rushmore.  (ECF No. 74.)  At this time, the FDCPA claims against Rushmore are the only remaining claims.  (*Id.*)

The Complaint alleges Rushmore is a "debt collector" as defined under 15 U.S.C. § 1692a(6) and that it "wrongfully engaged in numerous acts in New Jersey in an attempt to collect a purported debt from" them.  (ECF No. 1 ¶ 10.)  Plaintiffs allege, for example, that "in June of 2016[,] Rushmore sent [P]laintiffs a mortgage statement demanding payment of $337,875.28 on behalf of [WSFS]." (ECF No. 1 ¶ 28.)  However, Plaintiffs claim that "[a]ll efforts of Rushmore to collect on the mortgage and note within the last year (and prior thereto) on behalf of [WSFS] were false, misleading[,] and fraudulent because the mortgage and note had not been validly assigned to [WSFS]." (*Id.*)  Plaintiffs allege that the "original mortgage assignment [from Freddie Mac to BOA] was dated on or about August 17, 2015, which was the effective, legal date of the

4

assignment, but at some point it was 'backdated' in an after-the-fact attempt to make it effective as of June 1, 2015," and validate the subsequent assignments. (ECF No. 1 ¶ 19.)

Under the first cause of action, Plaintiffs allege that Rushmore's efforts to collect on the Mortgage and Note "constituted harassment and abuse" under Section 1692d of the FDCPA because WSFS did not hold a valid assignment of the Mortgage and Note. (*Id.* at ¶¶ 31, 38, 39.) Under the second cause of action, Plaintiffs allege that Rushmore's efforts to collect on the Mortgage and Note "constituted the collection of a debt by false or misleading representations or deceptive means" under Section 1692e because WSFS did not hold a valid assignment of the Mortgage and Note. (*Id.* at ¶¶ 41, 48, 49.) Under the third cause of action, Plaintiffs allege that Rushmore's efforts to collect on the Mortgage and Note "constituted the collection of a debt by using false representations or deceptive means" under Section 1692e(10) because WSFS did not hold a valid assignment of the Mortgage and Note. (*Id.* at ¶¶ 51, 58, 59.) Under the fourth cause of action, Plaintiffs allege that Rushmore's efforts to collect on the Mortgage and Note "constituted the collection of a debt using unfair or unconscionable means" under Section 1692f because WSFS did not hold a valid assignment of the Mortgage and Note. (*Id.* at 61, 68, 69.)

In essence, the parties dispute the validity of the "assignment chain" because the Mortgage assignment from Freddie Mac to BOA was executed August 17, 2015, but had an effective date of June 1, 2015.

## II. PARTIES' ARGUMENTS

### A. Defendant's Position

Rushmore argues that it did not violate Section 1692 of the FDCPA when it mailed the mortgage statement to Plaintiffs because, as WSFS's servicer, Rushmore was "permitted to act on its behalf to invoice the Plaintiffs and collect the monthly mortgage payments from Plaintiffs."

5

(Moving Br. at 12, ECF No. 81-20.) Rushmore submits it provided sufficient proof that the Mortgage and Note were sold to WSFS and that Rushmore was the servicer for WSFS at all relevant times. (*Id.*) More specifically, Rushmore argues that the Mortgage and Note were in its possession when it mailed the monthly statement to Plaintiffs in June 2016. (*Id.* at 14.)

In support of its position, Rushmore relies on the underlying Foreclosure Action where the State Court considered a Certification from Kevin Elliot, the Senior Vice President of Rushmore. (*Id.*) Rushmore contends that the State Court relied on Elliot's Certification in entering judgment in favor of WSFS and against Plaintiffs. (*Id.*) According to Rushmore, Elliot's Certification "establishe[d] that Rushmore was a 'person entitled to enforce' an instrument under New Jersey law since the note and mortgage were in the possession of Rushmore at the time of the mailing of the mortgage statement." (*Id.*) Moreover, Rushmore emphasizes that it possessed the Mortgage and Note pursuant to the Base Servicing Agreement and the Power of Attorney. (*Id.* at 15.)

In addition, Rushmore contends that the mortgage statement itself did not violate Sections 1692d, 1692e, and 1692f of the FDCPA because "[t]here is nothing in the monthly statement which can be remotely considered violative of the FDCPA . . . ." (*Id.* at 16–18.) In fact, Rushmore notes that it was required to send the monthly statement pursuant to Regulation Z of the Truth in Lending Act ("TILA"). (*Id.* at 17-18.) It argues that, according to the Consumer Financial Protection Bureau, a servicer acting as a debt collector—such as Rushmore—may not be liable under the FDCPA for complying with TILA. (*Id*. at 17–18.) Rushmore also relies on *Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559 (D.N.J. 2016), for the proposition that it cannot be held liable under the FDCPA for providing periodic mortgage statements to Plaintiffs in accordance with TILA.

B. **Plaintiffs' Position**

Plaintiffs argue that Rushmore could not have "properly collect[ed] a debt from [them], because its principal, WSFS, was not the proper holder of the mortgage at the time that Rushmore acted as servicing agent for WSFS." (Opp'n Br. at 2.) Plaintiffs contend that "Rushmore's collection efforts could not have been valid and violated the FDCPA" because "there was a break in the assignment chain prior to the mortgage being assigned to WSFS." (*Id.*) Therefore, Plaintiffs believe that Rushmore's "mortgage statements were false and misleading because they falsely represented that a debt was owed [to] Rushmore/WSFS." (*Id.* at 7.) In addition, Plaintiffs construe Rushmore's statements as including "a delinquency notice with a threat of foreclosure" because it informed Plaintiffs that they were "2839 days delinquent on [their] mortgage" and that their loan was in foreclosure. (*Id.* at 7–10.) Plaintiffs also argue that "Rushmore violated the FDCPA [by] attempting to collect on a debt by falsely swearing in the [Foreclosure Action] that it was in possession of the original mortgage" Note. (*Id.* at 10.)

III. **LEGAL STANDARD**

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

"In evaluating the evidence, the Court must consider all facts and their logical inferences in the light most favorable to the non-moving party." *Rhodes v. Marix Servicing, LLC*, 302

F. Supp. 3d 656, 661 (D.N.J. 2018) (citing *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002)). "While the moving party bears the initial burden of proving an absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to 'set forth specific facts showing that there is a genuine [dispute] for trial.'" *Id.* (quoting *Anderson*, 477 U.S. at 250). "Unsupported allegations, subjective beliefs, or argument alone . . . cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019). "Thus, if the nonmoving party fails 'to make a showing sufficient to establish the existence of an element essential to that party's case . . . there can be no genuine issue of material fact.'" *Id.* (quoting *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quotation marks omitted)). "In considering the motion, the Court 'does not resolve factual disputes or make credibility determinations.'" *Rhodes*, 302 F. Supp. 3d at 661 (quoting *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995)).

**IV.     DISCUSSION**

Congress enacted the FDCPA because of the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices" and the inadequacy of existing laws and procedures designed to protect consumers. 15 U.S.C. § 1692(a)–(b). The FDCPA's purpose is "to eliminate abusive debt collection practices by debt collectors" and to promote further action to protect consumers against abusive debt collection. *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 174 (3d Cir. 2015) (quoting 15 U.S.C. § 1692(e)).

Typically, "[t]o prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir.

2014); *see also Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015). The FDCPA defines a "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a(6). "Creditors—as opposed to 'debt collectors'—generally are not subject to the FDCPA." *Id.* A "creditor" is "any person who offers or extends credit creating a debt or to whom a debt is owed," but a creditor "does not include any person [who] . . . receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4). Accordingly, the definition "excludes creditors who attempt to collect their own debts[] but does not exclude" entities that have acquired debt already in default. *Oppong v. First Union Mortg. Corp.*, 215 Fed. App'x 114, 118 (3rd Cir. 2007); *see Staub v. Harris*, 626 F.2d 275, 277 (3rd Cir. 1980) (citations omitted) (noting the FDCPA "does not apply to persons or businesses collecting debts on their own behalf. It is directed to those persons who are engaged in business for the principal purpose of collecting debts").

Under the FDCPA, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. *See, e.g.*, 15 U.S.C. § 1692d(2) (prohibiting debt collectors from using obscene or profane language to abuse the reader). In addition, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The FDCPA

also prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. More specifically, a debt collector may not use "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10). Violations of Section 1692e(10) usually "include impersonating a public official, falsely representing that unpaid debts will be referred to an attorney, and misrepresenting the amount of the debt owed." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 331 (6th Cir. 2006) (internal citations omitted); *see, e.g.*, *Crossley v. Lieberman*, 868 F.2d 566, 571 (3d Cir. 1989) (holding attorney violated § 1692e(10) when he sent a collection letter that falsely represented that a mortgage foreclosure case was already in litigation, that threatened to take action within one week, and failed to inform debtor of her right to cure).

Here, Plaintiffs have failed to establish the existence of an element which is essential to their FDCPA claims: that Defendant violated a provision of the FDCPA in attempting to collect the debt. Plaintiffs claim that Rushmore's mortgage statement violated the FDCPA because WSFS did not hold a valid assignment of the Mortgage and Note. (ECF No. 1 ¶¶ 38, 39, 48, 49, 58, 59, 68 and 69.) Plaintiffs argue that the assignment of the Mortgage was invalid because the original assignment from Freddie Mac to BOA was dated on or about August 17, 2015, and supposedly "back dated" to June 1, 2015. (ECF No. 1 ¶ 19.) However, the validity of the mortgage assignment has already been decided by the Foreclosure Action in 2017 when the State Court entered final judgment in favor of WSFS. (DSMF ¶ 18; ECF No. 73 at 3.)

Consistent with prior decisions in this matter, this Court recognizes that Plaintiffs could not have brought their FDCPA claims against Rushmore in the Foreclosure Action. *See Tobing v. Parker McCay, P.A.*, Civ. No. 17-00474, 2018 WL 2002799, at *8 (D.N.J. Apr. 30, 2018); *Tobing*

10

*v. Parker McCay, P.A.*, Civ. No. 17-00474, 2020 WL 7768410, at *4 (D.N.J. Dec. 30, 2020). However, to the extent Plaintiffs attack the validity of the assignment to sustain their FDCPA claims, Plaintiffs are estopped from advancing a position they already presented and lost in a prior proceeding. *Peloro v. United States*, 488 F.3d 163, 175 (3d Cir. 2007). Collateral estoppel precludes a party from re-litigating an issue when:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

*Twp. Of Middletown v. Simon*, 193 N.J. 228, 236 (2008).

Here, the issue Plaintiffs seek to re-litigate is identical to the issue decided in the Foreclosure Action. The State Court already considered the validity of the mortgage assignment, an issue that was essential to its judgment. *See Great Falls Bank v. Pardo*, 263 N.J. Super 388, 394 (Ch. Div. 1993) ("The only material issues in a foreclosure proceeding are the validity of the mortgage, the amount of the indebtedness, and the right of the mortgagee to resort to the mortgaged premises."). In support of Freddie Mac's motions in the Foreclosure Action, the Senior Vice President of Rushmore certified that WSFS possessed the original mortgage note since March 19, 2015. (PSMF ¶ 8.) Notwithstanding Plaintiffs' arguments to the contrary in the Foreclosure Action, the State Court nevertheless substituted Freddie Mac for WSFS, granted summary judgment in favor of Freddie Mac, and ordered the court clerk to enter default against Plaintiffs. (*See* ECF No. 67-5; ECF No. 67-7.) Although the parties have not supplied the State Court opinion accompanying its order dated July 22, 2016, its import is clear. The State Court would not have entered final judgment in the Foreclosure Action unless the Mortgage was valid.

Moreover, the undisputed facts establish that Rushmore was authorized to collect debt on behalf of WSFS pursuant to the Base Servicing Agreement executed in 2014. Plaintiffs received notice from BANA that the servicing of their home loan would transfer to Rushmore on May 1, 2015. (DSMF ¶ 11.) Rushmore also sent Plaintiffs a Notice of Assignment, Sale, or Transfer of Servicing, which confirmed the servicing of their mortgage loan was assigned, sold, or transferred from BANA to Rushmore effective May 1, 2015. (DSMF ¶ 13.) As the servicer, Rushmore did nothing more than send monthly mortgage statements, like the June 2016 statement, concerning the delinquent Note and Mortgage. Accordingly, Plaintiffs' argument that Rushmore falsely represented a debt owed is without merit.

As for Plaintiffs' argument that Rushmore's statements included a delinquency notice with a threat of foreclosure, nothing in the mortgage statement rises to the level of a violation under the FDCPA. (*Id.* at 7–10.) Even considering "all facts and their logical inferences in the light most favorable to" Plaintiffs, there was no FDCPA violation. *Rhodes*, 302 F. Supp. 3d at 661 (citing *Curley*, 298 F.3d at 276–77). The mortgage statement contained no false, deceptive, or misleading representations as contemplated under 15 U.S.C. § 1692e, and it contained no obscene or profane language intended to harass or abuse Plaintiffs, 15 U.S.C. § 1692d(2). In addition, no facts indicate that Rushmore engaged in unfair or unconscionable practices. *See* 15 U.S.C. § 1692f.

Plaintiffs' subjective belief or argument concerning the break in the "assignment chain" cannot forestall summary judgment. *Read*, 397 F. Supp. 3d at 625. There is no "genuine dispute as to any material fact," and Rushmore "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## V.   CONCLUSION

For the reasons stated above, Defendant's Motion will be granted.  Summary judgment will be entered in favor of Defendant as to all claims and this matter will be closed.  An appropriate order follows.

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**